UNITED STATES of America, Appellant,

v.

Frank DeMARCO, Jr., Appellee.

No. 75–3824.

United States Court of Appeals,
Ninth Circuit.

March 30, 1977.

See also, D.C., 407 F.Supp. 107.

Frank M. Tuerkheimer, Special Asst. Pros., Madison, Wis., Charles F. Ruff, Special Pros., Watergate Special Prosecution Force, Washington, D. C., argued, for appellant.

Donald C. Smaltz, George A. Wedner, Los Angeles, Cal., Charles A. McNelis, Welch & Morgan, Washington, D. C., argued, for appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and KING,* District Judge.

HUFSTEDLER, Circuit Judge:

The Government appeals, under 18 U.S.C. § 3731, from the dismissal of an indictment against DeMarco. The district court gave two reasons for dismissing the indictment: (1) The challenged indictment was the culmination of governmental efforts designed to discourage or to prevent DeMarco from asserting his statutory venue rights, and failure to dismiss the indictment would permit the "potential for vindictiveness" proscribed in *Blackledge v. Perry* (1974) 417 U.S. 21, 28, 94 S.Ct. 2098, 40 L.Ed.2d 628; and (2) the failure of the prosecutor to inform the grand jury about the facts leading the prosecutor to seek the California indictment interfered with the deliberative function of the grand jury.[1] Because we agree with the district court's application of *Blackledge*, we do not reach the second ground for the district court's decision.

This case grew out of an investigation into the preparation of President Nixon's 1969 income tax return in which a deduc-

---

* Honorable Samuel P. King, Chief Judge, United States District Court, District of Hawaii, sitting by designation.

1. The district court's opinion is reported at 401 F.Supp. 505.

tion was claimed for the gift of pre-Presidential papers to the National Archives. DeMarco and Ralph Newman were indicted in February, 1975, in the District of Columbia. The indictments charged them with conspiring to defraud the United States; with making false statements to the Staff of the Joint Committee on Internal Revenue Taxation, to Treasury agents, and to agents of the Internal Revenue Service ("IRS") in the District of Columbia; and with obstructing the congressional investigation of President Nixon's tax returns. Newman and DeMarco moved to change venue to the districts of their residence, Chicago and Los Angeles respectively. (18 U.S.C. § 3237(b); Fed.R.Crim.P. 21(b).) The Government vigorously opposed the motions and the resulting severance of the defendants' trials. The district court in the District of Columbia granted the motions. The district court below found that, after the motions were granted, the prosecutor told DeMarco's counsel that "the government was considering filing a motion for reconsideration of the order of transfer, that if [DeMarco] successfully transferred his case to California the government would consider more counts against him, and that the government would 'restructure' the case against him if it came to California." (401 F.Supp. at 508.) The prosecutor also told defense counsel that "restructuring" might possibly lead to his recommending dismissal of some of the original charges. DeMarco insisted upon his venue rights, and the original indictment was transferred to California.[2] The Government obtained a second indictment in California, based on substantially the same facts as the first indictment, with the addition of a specific charge relating to statements that DeMarco made to IRS agents in a California interview on February 22, 1974. The facts upon which the second indictment was founded had been known to the Government long before the first indictment was returned.

The district court found that "the government deliberately used the threat of a new indictment in California to deter the defendant from exercising his statutory [venue] rights" and that the government "threatened to respond [to his exercising his rights] by 'upping the ante.'" (401 F.Supp. at 508–09, *quoting Blackledge*, 417 U.S. at 28, 94 S.Ct. 2098.) Those findings are amply supported by the record.

The Government argues that *Blackledge* does not control because here, unlike *Blackledge*, the first and second indictments were not based on identical facts and because the motivation for the Government's threats grew out of limits placed on the original indictment resulting from the policy of the Department of Justice not to pursue contemporaneous indictments, rather than any vindictiveness against the defendant. The Government's contentions rest on misperception of the record and a misreading of *Blackledge*.

The Government's contention that there had occurred a "major change legitimately bearing on the prosecution function" which justifies distinguishing *Blackledge* is unsupported by the record. The only "major change" was severance resulting from DeMarco's exercise of his statutory venue right. The Government cannot rely on the exercise of that right to defeat *Blackledge*. The factual nucleus of both indictments was the same. The District of Columbia indictment did not specifically charge an offense based upon DeMarco's interview with IRS agents in California on February 22, 1974, but the California statement was part of the evidence presented to the District of Columbia grand jury. Moreover, the California statement was a duplicate of DeMarco's statement in the District of Columbia to the Joint Committee, upon which the original indictment was, in part, based.

■ Even if the first and second indictments were not based on facts that were so similar that a trial on one would have prevented trial on the other upon double jeopardy grounds, that situation would not dis-

---

**2.** The case went to trial on the original indictment, but the indictment was dismissed during the course of trial on grounds unrelated to those involved in this case. The dismissal of the original indictment is not involved on this appeal.

tinguish this case from *Blackledge.* In *Blackledge* the Court specifically eschewed reliance on double jeopardy. (417 U.S. at 31, 94 S.Ct. 2098). *See also United States v. Ruesga-Martinez* (9th Cir. 1976) 534 F.2d 1367.) Rather, the progenitor of *Blackledge* was *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. *Pearce* forbade increasing a sentence upon retrial after the defendant had successfully appealed, absent new facts unrelated to the appeal, affecting sentencing. The Court reasoned that fear of vindictiveness for exercising a statutory right to appeal was as forceful as actual vindictiveness in chilling a defendant's "free and unfettered" (*id.* at 724, 89 S.Ct. 2072) choice in deciding to appeal. ("[D]ue process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725, 89 S.Ct. at 2080.) Apprehension of vindictiveness and the "appearance of vindictiveness" (*United States v. Ruesga-Martinez* (9th Cir. 1976) 534 F.2d 1367, 1369) are adequate to bring this case squarely within *Blackledge.* The district court found those facts against the Government, and we have no basis to disturb those findings.

*DeMarco* is controlled by the teaching of *Blackledge* unless the statutory right involved (change of venue to the defendant's residence) is so different from the statutory rights to appeal (*North Carolina v. Pierce, supra*) and to a trial *de novo* (*Blackledge v. Perry, supra*) as to justify a different result. We perceive no basis for distinguishing DeMarco's venue right under 18 U.S.C. § 3237(b) from the statutory rights considered in *Blackledge* and *Pearce.* As in those cases, the statutory right involved has due process overtones, although none of the rights is constitutionally mandated. The Section 3237(b) venue right is laden with due process concern for a fair trial in which the litigating burdens are not inordinately cast on the defendant. Congress intended to relieve the defendant from the "heavy burden" caused by tax prosecution in a judicial district "substantially distant" from the defendant's residence. (Senate Rep. No. 1952, 85th Cong., 2d Sess. (1958); 1958 U.S.Code Cong. & Admin.News, p. 3262.) The defendant's expense and his difficulties in securing counsel, his problems in finding witnesses (especially character witnesses) who would be able to travel to a distant forum were all considered by Congress in its decision to relieve the defendant from defending himself away from his residence. (*Id.*)

As in *Blackledge,* "the central figure is not the judge or the jury, but the prosecutor. The question is whether the opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case. We conclude that the answer must be in the affirmative." (417 U.S. at 27, 94 S.Ct. at 2102. *See also United States v. Ruesga-Martinez, supra,* 534 F.2d at 1370–71.) Here, as in *Blackledge,* a prosecutor "has considerable stake in discouraging" defendants from exercising their venue rights when the effect "will clearly require increased expenditures of prosecutorial resources" because the prosecutor loses the advantages of trying alleged conspirators together and must also conduct two trials in different parts of the country. (*Id.*)

■ *Blackledge* and *Pearce* each establish a prophylactic rule imposing limits upon prosecutorial discretion is seeking new indictments or in conducting retrials when such actions carry with them the opportunity of retaliation for a defendant's exercise of a statutory right that has due process implications. It is irrelevant that a particular defendant exercises his statutory rights, despite his fear of vindictiveness and despite the lack of vindictiveness in fact in subsequent proceedings instituted by the prosecutor. The prophylactic rule is designed not only to relieve the defendant who has asserted his right from bearing the burden from "upping the ante" but also to prevent chilling the exercise of such rights by other defendants who must make their choices under similar circumstances in the future.

Under *Pearce* and *Blackledge,* it was not constitutionally permissible for the Govern-

ment to threaten to "up the ante" to discourage DeMarco from exercising his venue right; *a fortiori* it was constitutionally impermissible to follow up the threat with the California indictment. No abuse of discretion is involved in the district court's dismissing the indictment for *Blackledge* taint.

AFFIRMED.