**UNITED STATES of America, Plaintiff,**

**v.**

**Angelo R. LIPPI, Defendant.**

**Crim. A. No. 77–134.**

United States District Court, D. New Jersey.

Aug. 1, 1977.

---

U. S. Atty. Jonathan L. Goldstein by Edwin R. Matthews, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Miller, Hochman, Meyerson & Schaeffer by Gerald D. Miller, Jersey City, N. J., for defendant.

## MOTION TO DISMISS INDICTMENT OPINION

GERRY, District Judge.

Defendant Angelo Lippi has moved to dismiss this indictment against him on the grounds of prosecutorial misconduct asserting that the felony charges contained in it were brought in retaliation for his refusal to waive his right to a trial before a district judge under an earlier misdemeanor complaint filed with a U. S. Magistrate. The parties agreed to a resolution of the issue upon affidavits of both counsel, after a hearing at which neither side presented testimony. For the reasons stated below, the court finds that the appearance of impermissible prosecutorial pressure upon the defendant's exercise of his statutory and constitutional rights requires that the indictment in this action be dismissed.

The affidavits of counsel reveal the following facts. On or about February 24, 1977, the Assistant U. S. Attorney in charge of this case was informed by the Postal Inspection Service of an investigation into the disappearance of mail at the post office in Saddle River, New Jersey. On that date, he authorized a postal inspector to arrest postal employee Angelo Lippi for obstruction of the mail in violation of 18 U.S.C. § 1701,[1] a misdemeanor offense. A complaint was filed the following day before a U. S. Magistrate, Exhibit attached to Miller Affidavit, charging Lippi with obstruction of the mail on two occasions, February 9 and 14, 1977. The Assistant U. S. Attorney's affidavit states that

[s]ubsequent to Mr. Lippi's arraignment on February 25, 1977, I discussed this matter on numerous occasions with Postal Inspector Kyanko. It became obvious to me during the course of these discussions that in addition to the charge already filed against Mr. Lippi that there was evidence to support four additional charges against Mr. Lippi. On March 7, 1977, when I received a letter from Gerald D. Miller indicating that he was counsel for Mr. Lippi, I called Mr. Miller and advised him in substance that our office had a policy which favored the handling of postal matters before the U. S. Magistrate. I further advised Mr. Miller that in addition to the charges set forth in the initial complaint filed before [the magistrate] that subsequent to the filing of the complaint information was developed which showed that the defendant had

---

1. 18 U.S.C. § 1701 provides

Whoever knowingly and willfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined not more than $100 or imprisoned not more than six months, or both.

committed other postal violations on other dates, and that based on this fact that a felony prosecution and/or the filing of additional charges would be warranted by the facts. I further advised Mr. Miller that if Mr. Lippi consented to have the matter heard before the Magistrate, the Government would forego its right to file additional charges on these facts and its right to seek an indictment on the felony charges. Mr. Miller specifically advised me that he would consult with his client on this matter, but that he did not know if this could be done prior to March 10, 1977, the date set for election of forum, because defendant was too emotionally upset by the events.

Affidavit of Matthews at ¶ 2.

On March 10, Lippi appeared before the magistrate to elect the forum in which the complaint was to be tried, as required by the terms of the complaint. Upon the advice of his counsel, he elected to have the matter tried by a district judge pursuant to 18 U.S.C. § 3401(b).[2]

The Assistant U. S. Attorney's affidavit continues in these words:

> On or about March 15, 1977, I again contacted Gerald D. Miller, counsel for the defendant, and discussed with him the question of whether or not the defendant would consent to the jurisdiction of the Magistrate. I again specifically told Mr. Miller that the Government was in a position to bring additional charges and my feeling was that the facts in the case would warrant a felony prosecution. Mr. Miller advised me that Mr. Lippi would not consent to the jurisdiction of the U. S. Magistrate because he felt that Judge [X] was a Government Judge who never found any defendant not guilty. He further indicated he felt his chances would be better if he went before a U. S. District Judge where he had an opportunity to have the matter tried by either [of two named judges] who would become irritated with the Government for bringing the charge in the first place.[3] Mr. Miller specifically stated that if the matter had been assigned to U. S. Magistrate [Y] he would in fact consent to the jurisdiction of the Magistrate. I told Mr. Miller that upon receipt of an investigative report that I would review the matter in its entirety and based on all the evidence would make a decision as to what prospective action would be taken.
>
> On March 15, 1977, I received an investigative report and upon review presented the matter to a Grand Jury on April 6, 1977.

Id. at ¶¶ 3, 4. The Grand Jury returned an indictment charging six counts of delay and destruction of mail by a postal employee in violation of U.S.C. § 1703(a),[4] a felony charge.

2. 18 U.S.C. § 3401(a) and (b) provide
(a) When specially designated to exercise such jurisdiction by the district court or courts he serves, and under such conditions as may be imposed by the terms of the special designation, any United States magistrate shall have jurisdiction to try persons accused of, and sentence persons convicted of, minor offenses committed within that judicial district.
(b) Any person charged with a minor offense may elect, however, to be tried before a judge of the district court for the district in which the offense was committed. . . .
Subsection (f) of the statute defines minor offenses generally as
misdemeanors punishable under the laws of the United States, the penalty for which does not exceed imprisonment for a period of one year, or a fine of not more than $1,000, or both . . . .

3. Defense counsel avers that the prosecutor, not he, feared irritating district judges with misdemeanor prosecutions and attributes this statement to his opponent. Supplemental Affidavit of Miller at ¶ 4.

4. 18 U.S.C. § 1703(a) (Supp.1977) provides
Whoever, being a Postal Service officer or employee, unlawfully secretes, destroys, detains, delays, or opens any letter, postal card, package, bag, or mail entrusted to him or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any carrier or other employee of the Postal Service, or forwarded through or delivered from any post office or station thereof established by authority of the Postmaster General or the Postal Service, shall be fined not more than $500 or imprisoned not more than five years, or both.

At the time of the filing of the misdemeanor, the Assistant U. S. Attorney was aware of statements given to postal authorities by four witnesses who had found postage due mail in the trash in January and February, 1977, on days when Lippi was on duty as the handler of postage due mail. Exhibits 7, 8, 13, 14 attached to Supplemental Affidavit of Matthews. One of them reported that Lippi had admitted discarding postage due mail but had claimed that the addressees had refused to pay for it. Exhibit 14. The complaint charged that Lippi had obstructed the mails on February 9 and 14, 1977.

Very shortly after the complaint was filed, the Assistant U. S. Attorney learned of statements given by five other witnesses.[5] Exhibits 9, 15, 16, 17, 18 attached to Supplemental Affidavit of Matthews. The new statements contain circumstantial evidence of two violations not charged in the complaint (set forth in Counts I and II of the indictment) and direct evidence of acts charged in Count III of the indictment that were at least intimated at the time of the complaint. *Compare* Exhibits 9 and 16 *with* Exhibit 13. Counts IV, V and VI are based on facts recited in the earlier complaint. The primary impact of the new evidence is that several witnesses actually saw Lippi throwing away mail on several occasions. Exhibits 9 and 16. These accounts would constitute evidence of similar acts in support of all charges. On the other hand, no substantially more serious crimes are revealed in the later statements than were detailed in the earlier statements. The primary difference between the misdemeanor and felony offenses charged is that the latter requires the defendant to be a postal employee, a fact known to the prosecutor at the outset. See notes 1 and 3 *supra*. Apparently, the substance of these later statements was made known to the prosecutor in conversations with the postal inspector prior to March 7, the date of his first conversation with defense counsel. Affidavit of Matthews at ¶ 2.

Defendant Lippi contends that the felony indictment was brought in retaliation for his refusal to accede to the prosecutor's demand that he waive his statutory right to trial before a district court in violation of his Fifth Amendment right to due process of law, and that accordingly the indictment must be dismissed. The court agrees.

The Supreme Court addressed the due process effect of governmental retaliation for a defendant's exercise of his procedural rights in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), in which a criminal defendant who had successfully appealed his conviction and won a new trial was sentenced to a harsher term upon reconviction than had originally been imposed. The Supreme Court held that although heavier sentences were not absolutely prohibited under such circumstances, the due process clause required that the reasons justifying a heavier sentence be affirmatively given, so that a defendant who contemplates an appeal may be free of apprehension of vindictiveness on the part of the sentencing judge. *Id.* at 725, 89 S.Ct. 2072. In *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court extended the *Pearce* rule to protect against fear of prosecutorial vindictiveness. The case was brought by a prisoner defendant who had been charged with misdemeanor assault with a deadly weapon after a prison fight. After conviction in an inferior state court, he was sentenced to a six-month term. Under state law, a person convicted in an inferior court had an absolute right to a trial *de novo* in the state's superior court. After defendant filed his notice of appeal, the prosecutor obtained an indictment charging him with felonious assault with a deadly weapon for the same acts for which he had been previously convicted. He pleaded guilty and was given a seventeen-month sentence. *Id.* at 22–23, 94 S.Ct. 2098. The Court examined its holding in *Pearce* and subsequent cases and ruled

5. The statement of Alice Steffans was taken on February 23, 1977, but not read by the prosecutor until after the complaint was filed. Prosecutor's Supplemental Affidavit at ¶ 3. The court will consider this statement to be post-complaint evidence.

that the due process clause was offended when the circumstances posed a "realistic likelihood" that increased punishment upon retrial after appeal was prompted by vindictiveness, whether on the part of judge, jury or prosecutor. *Id.* at 27, 94 S.Ct. 2098. Although acknowledging the absence of any evidence of bad faith or malicious motivation on the part of the prosecutor, the Court noted that a prosecutor had a significant interest in discouraging misdemeanants from demanding trials *de novo* that would tax prosecutorial resources and had the means to do so by "upping the ante" with a felony indictment after a defendant exercised his statutory right. *Id.* at 25–26, 94 S.Ct. 2098. The Court ruled that it was constitutionally impermissible for a prosecutor to increase the severity of charges against a defendant who had exercised a statutory right to an appeal in the absence of reasons for the increased charges sufficient to eliminate the appearance of vindictiveness. *Id.* at 28–29 & n. 7, 94 S.Ct. 2098.

█ The *Pearce* and *Blackledge* cases have devised a prophylactic rule insuring that accused or convicted persons will be free of the apprehension of prosecutorial retaliation for the exercise of their constitutional and statutory rights.[6] The rule shifts the burden to the prosecutor upon the "appearance" of vindictiveness to justify his seemingly retaliatory action or to be barred from pursuing it. *United States v. Ruesga-Martinez,* 534 F.2d 1367, 1369 (9th Cir. 1976). The defendant need not prove that he was an actual victim of retaliation under the rule but only that he has a realistic apprehension that the prosecutor has retaliated for his exercise of his rights. *Blackledge v. Perry,* 417 U.S. at 28, 94 S.Ct. 2098; *North Carolina v. Pearce,* 395 U.S. at 725, 89 S.Ct. 2072, 23 L.Ed.2d 656; *United States v. Johnson,* 537 F.2d 1170, 1173 (4th Cir. 1976). The *Pearce-Blackledge* rule has been applied by the lower courts in a number of circumstances beyond the retrial-after-successful-appeal situation detailed in

the two Supreme Court cases. The rule has been applied to a wide variety of situations in which courts have detected a significant possibility of prosecutorial retaliation against defendants who have exercised their rights. In *Hayes v. Cowan,* 547 F.2d 42 (6th Cir. 1976), the court dismissed a harsher indictment obtained after defendant refused to accept an offered plea bargain on an earlier indictment despite the prosecutor's threat that additional charges would be brought if his offer were rejected. An indictment for first degree murder brought after defendant made a successful motion for a mistrial in a second degree murder case was dismissed as a violation of due process when the prosecutor failed to show any justification for the increased charge in *United States v. Jamison,* 164 U.S.App.D.C. 300, 505 F.2d 407 (1974). Similarly, a forty-one count indictment brought after defendant successfully overturned his guilty plea to two counts of a previous four count indictment was dismissed as a violation of due process in *United States v. Johnson,* 537 F.2d 1170 (4th Cir. 1976). The application of the rule has been applied to pretrial situations as well. In *United States v. De Marco,* 550 F.2d 1224 (9th Cir. 1977), the court approved dismissal of an increased indictment brought after defendant refused to abandon a successful motion to transfer venue (which resulted in his severance from a co-defendant) despite the prosecutor's threats that additional charges would be brought if he persisted. The same court dismissed an indictment in a case almost identical to the present one in which a misdemeanor defendant was reindicted on felony charges after insisting on his right to be tried by a district judge rather than a magistrate. *United States v. Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976). The broadest application of the rule is found in a very recent case in which a district court dismissed an indictment against a defense contractor after deter-

---

6. In *Pearce,* the Court stressed that its ruling did not depend on whether the right affected was constitutional or not for the imposition of a greater penalty upon a defendant for success-

fully exercised a statutory right of appeal would clearly be a violation of the due process clause. *Id.* at 724, 89 S.Ct. 2072.

mining that the prosecutor had used the threat of a criminal investigation to force the contractor to reopen an administrative award of cost overruns on a government contract. *United States v. Litton Systems,* Cr. No. 77–70 (E.D.Va., filed May 25, 1977) (reported in 21 Cr.L.Rptr. 2258, June 22, 1977).

The burden imposed by *Pearce* and *Blackledge* upon a prosecutor who brings harsher charges after an accused exercises a procedural right is a heavy one. See *United States v. Ruesga-Martinez,* 534 F.2d at 1369. When there is no new evidence discovered subsequent to the original charges, courts have not hesitated to deem the amplified charges inherently suspect. *Blackledge v. Perry,* 417 U.S. at 23, 28, 94 S.Ct. 2098; *North Carolina v. Pearce,* 395 U.S. at 717–18, 89 S.Ct. 2072; *United States v. Ruesga-Martinez,* 534 F.2d at 1369–70; *United States v. Jamison,* 164 U.S.App.D.C. 300, 505 F.2d 407, 417 (1974); *United States v. Gerard,* 491 F.2d 1300, 1306 (9th Cir. 1974). When the absence of newly discovered evidence is accompanied by evidence of improper motive, in the form of prosecutorial threats of the prospect of heavier charges if an accused insists on his rights, the prophylactic rule has been applied with even greater vigor. *Hayes v. Cowan,* 547 F.2d at 43; *United States v. De Marco,* 550 F.2d at 1227–28;[7] *United States v. Litton Systems, supra.*

The lower courts have emphasized, however, that the *Pearce-Blackledge* rule is not limited to situations in which the government was aware of facts essential to the second indictment when the first charges were brought.[8] In *United States v. Johnson, supra,* the prosecutor contended that a harsher indictment was exempt from the application of the rule because it was based on facts discovered after the original charges were filed. 537 F.2d at 1172–73. The Fourth Circuit quickly rejected this argument. It read *Blackledge* not as a restrictive listing of the tactics that might give rise to fear of prosecutorial vindictiveness, but as an unequivocal assurance that a defendant need not fear retaliatory consequences for the exercise of his appellate rights. Accordingly the court refused to restrict the time for assessing the prosecutor's knowledge to the time of the original charges and ruled that all of the surrounding circumstances must be examined to determine whether a defendant has been subject to a realistic apprehension of retaliation. *Id.* at 1173. It found that the new facts on which the second indictment was based had been discovered by the prosecutor prior to the time when defendant changed his plea to guilty. During the many months that the guilty plea stood, the government made no attempt to bring additional charges on the new material. From the filing of numerous new charges after vacation of the guilty plea, the court found a realistic possibility of vindictiveness and dismissed the indictment.[9] *Id.* Similarly,

7. The trial judge in *De Marco,* whose ruling was affirmed, stated that

[e]ven if the facts of the [second] indictment were wholly dissimilar from the [first] indictment, a different result need not obtain. *The threat of increased charges is indefensible whether or not those charges grew out of the same transaction.*

401 F.Supp. 505, 511–12 n. 2 (C.D.Cal.1975) (emphasis added). This dicta suggests that overt prosecutorial threat of greater charges if defendant fails to exercise some right is sufficient alone to trigger the application of the rule.

8. This argument arises from a footnote in *Blackledge* in which the Court observed that increased charges at a statutory trial *de novo* would be permissible if the prosecutor could

show that it "was impossible to proceed on the more serious charge at the outset," for example, if an assault and battery victim died after the first trial and the second trial was based on a homicide charge. 417 U.S. at 29 n. 7, 94 S.Ct. at 2103. This comment was expanded by dictum in *United States v. Jamison,* 164 U.S.App. D.C. 300, 505 F.2d 407 (1974) that an increased charge might be justified "by intervening events or by new evidence of which the government was excusably unaware at the time of the first indictment. *Id.* at 417. See *United States v. Ruesga-Martinez,* 534 F.2d at 1370 n. 4.

9. The first count of the reindictment was left standing because it was identical to the charge to which defendant had pleaded guilty originally. 537 F.2d at 1173.

in *United States v. Gerard, supra,* a case decided after *Pearce* but before *Blackledge,* the court approved dismissal of an additional count added when the original three count indictment was revived after withdrawal of a guilty plea. The court found that, since the facts underlying the weapons count had been known to the prosecutor at the time the plea was withdrawn, there was sufficient appearance of vindictiveness to require dismissal of the added count. 491 F.2d at 1306–07. *See also U. S. v. Litton Systems, supra* (discovery of new evidence of criminal intent in second investigation did not change court's finding that second investigation was an attempt to pressure contractor into consenting to reopening of civil proceedings that had terminated in its favor).

The facts of the present case, as the court perceives them, readily reveal the appearance of prosecutorial vindictiveness. The prosecutor has forthrightly detailed two conversations, one prior and one subsequent to defendant's election of forum, in which he threatened to bring additional charges or felony charges against Lippi, unless he waived his statutory rights to a trial by a district judge. The prosecutor also admitted that he learned that there was evidence to support four additional charges and increased charges from his conversations with the postal inspector prior to his first conversation with defense counsel. Lastly, the prosecutor's affidavit reveals his "stake" in having this matter tried by a magistrate rather than a district judge. Such proceedings are less formal in keeping with the lesser penalties that may be imposed, and thus require less expenditure of prosecutorial resources than a district court trial. The affidavits hint that an additional consideration favoring magistrate trials of misdemeanor cases is the thought that district judges may become "irritated" at the prose-

cutor for adding misdemeanor cases to their crowded criminal dockets.

■ Although it is argued that the indictment was prompted solely by the discovery of new evidence, the new material is neither so significant nor so unforeseeable as to counter the distinct appearance of vindictiveness that arises from the prosecutor's statements to defense counsel. The court must find that the prosecutor has failed to carry the burden of dispelling this appearance of vindictiveness. The court cannot say that the fear of prosecutorial vindictiveness under all these circumstances is unreasonable. The atmosphere of improper coercion and retaliation created by the prosecutor infects this indictment with fatal taint.

■ The prosecutor makes two legal arguments that merit attention. Both may be treated briefly. The first is that the *Pearce-Blackledge* rule applies only to prosecutorial retaliation for the exercise of rights that have "due process implications." *Cf. United States v. De Marco,* 550 F.2d at 1227. Although the *Ruesga-Martinez* court failed to discuss this point with reference to the exercise of § 3401 rights,[10] the drafters of the statute emphasized the importance of the right to a trial by a district judge in the language of the statute itself. The second sentence of § 3401(b) reads as follows:

> The magistrate shall carefully explain to the defendant that he has a right to trial before a judge of the district court and that he may have a right to trial by jury before such judge and shall not proceed to try the case unless the defendant, after such explanation, signs a written consent to be tried before the magistrate that specifically waives both a trial before a judge of the district court and any right to trial by jury that he may have.

The last clause of the sentence indicates the drafters' awareness that most misdemeanor defendants in the magistrate courts will not

---

**10.** In *Ruesga-Martinez,* the court acknowledged that the defendant had no right to a jury trial when charged as a first offender under 8 U.S.C. § 1325 (misdemeanor of unlawful entry

into United States). 534 F.2d at 1370. The court grounded its decision upon a finding of retaliation for plaintiff's exercise of his right to

be entitled to a jury trial.[11] The language of the statute requires even more emphatic protection, then, of a defendant's right to a trial by a district court. In view of the mandatory language in the statute and the defendant's interest in being tried by an Article III judge who will act as the sole factfinder in a non-jury criminal trial,[12] this court cannot say that a defendant's right to a district court trial is devoid of "due process implications."

■■■ Secondly, the prosecution argues that the application of the *Pearce-Blackledge* rule to the early stages of criminal prosecution will deprive the government of its ability to engage in plea bargaining,[13] because the government will be deprived of "its right to prosecute [minor] matters as felonies if the defendant refuse[s] to consent to the jurisdiction of the Magistrate . . . ." Government's Brief at 12. Although the Supreme Court has approved of the practice of plea bargaining in cases in which there is no substantial issue as to the defendant's guilt, *Brady v. United States,* 397 U.S. 742, 752, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), it has recognized that the prosecutor does not enjoy unlimited freedom in the tactics he may use in plea bargaining. See *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The legitimate purposes of plea bargaining are as ill-served when a prosecutor uses his charging power to coerce unwilling defendants to waive their statutory rights as when it is used to coerce them to plead guilty, *Hayes v. Cowan,* 547 F.2d at 43–44. See *Brady, supra,* at 751 n. 8, 90 S.Ct. 1463.[14] The application of the *Pearce-Blackledge* rule to the early stages of prosecutions in no way detracts from the prosecutor's ability to offer a defendant concessions under an existing indictment, see *United States ex rel. Williams v. McMann,* 436 F.2d 103

a trial by a district court judge under 18 U.S.C. § 3401(b).

11. In 18 U.S.C. § 1(3), petty offenses are those misdemeanors punishable by not more than six months' imprisonment or $500 in fines, or both. A jury trial for such offenses is not constitutionally required. *Muniz v. Hoffman,* 422 U.S. 454, 476–77, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975); *Frank v. United States,* 395 U.S. 147, 150, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); *Bloom v. Illinois,* 391 U.S. 194, 210, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Duncan v. Louisiana,* 391 U.S. 145, 161–62, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The statute under which Lippi originally was charged is a petty offense, see note 1 *supra.* There is no statutory or constitutional requirement that violations of this statute be tried by jury.

12. The prosecutor argues that Lippi's insistance on his § 3401(a) rights was merely an attempt at forum-shopping. Even if this is so, Lippi was engaged in a limited type of forum-shopping vouchsafed to all minor offenders by Congress in the statute.

13. This argument has been rejected in *Hayes v. Cowan,* 547 F.2d at 44–45, *United States v. Ruesga-Martinez,* 534 F.2d at 1370–71, a case similar to the present one in which defendant was pressured to waive his § 3401 right to trial by a district judge in the name of plea bargaining, and *United States v. Gerard,* 491 F.2d at 1305–07.
It is interesting to note that the cases which have applied the *Pearce-Blackledge* rule to allegations of prosecutorial misconduct, but have refused to grant relief have arisen in the context of legitimate plea bargaining. For example, in *United States v. Anderson,* 514 F.2d 583, 588 (7th Cir. 1975) it was held that the reinstatement of all original charges after a defendant's guilty plea to lesser included charges was withdrawn or vacated, did not violate the rule because there was no appearance of vindictiveness in the government's return to its pre-plea bargain position after the defendant withdrew from the bargain. *See also United States v. Williams,* 534 F.2d 119, 122–23 (8th Cir. 1976), cert. denied, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976).

14. Only one case, *United States v. Butler,* 414 F.Supp. 394 (D.Conn.1976), has gone so far as to allow the government to bring additional charges on an indictment revived after withdrawal of a guilty plea in the name of plea bargaining. The prosecutor represented that he did not learn of the facts supporting the new charges until after the original indictment had been filed, even though they arose out of the same transaction. *Id.* at 396 n. 3. After the indictment and the discovery of the new facts, the prosecutor *offered to drop two out of three counts* and to seek no indictment on the new facts if defendant would plead to the remaining count. Although the propriety of accepting this transaction as legitimate plea bargaining may be questioned, the district court took pains to emphasize that had the prosecutor employed threats similar to those used in *De Marco* and in this case, relief would have been granted. *Id.* at 395 nn. 4 & 5.

(2d Cir. 1970), *cert. denied* 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971), or from his discretionary power to decide that the interests of the state are served by not seeking the most severe charges that the facts known might permit, *cf. United States v. Johnson,* 537 F.2d 1170 (4th Cir. 1976). But nothing in the discretionary power of a prosecutor authorizes him to threaten a defendant that a failure to waive statutory or constitutional procedural right will result in increased or additional charges being filed against him.

■ Since the Pearce-Blackledge prophylactic rule is designed not only to protect the defendant from retaliation for the exercise of his rights but to prevent the chilling of the exercise of such rights by other defendants who may be faced with similar choices in the future, it appears that dismissal of these indictments is the only effective method of curing the taint of vindictiveness in this case. Defendant's motion will be granted in an order entered by the court.