## COMMONWEALTH vs. HERBERT H. TIRRELL.

Franklin. October 9, 1980. — February 11, 1981.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* Plea, Agreement between prosecutor and defendant. *Due Process of Law,* Agreement between prosecutor and defendant, Plea. *Constitutional Law,* Plea. *District Attorney.*

The principles set forth in *North Carolina* v. *Pearce,* 395 U.S. 711 (1969), and *Blackledge* v. *Perry,* 417 U.S. 21 (1974), are inapposite to the plea bargaining process. [506-510]

Evidence that a defendant had entered pleas of guilty after learning that the prosecutor had decided to recommend a more severe sentence if the defendant went to trial than the one he had originally agreed to recommend did not support a claim that the pleas were involuntary. [510-511]

The fact that a prosecutor had made a "firm" agreement to recommend a certain sentence whether the defendant pleaded guilty or went to trial and that, after learning the defendant would stand trial, he stated that he would not recommend that sentence but a longer one did not entitle the defendant to withdraw his subsequent pleas of guilty where the recommendation made on the pleas was in accordance with the original agreement, and the sentences imposed were consistent with the agreement. [511-512] KAPLAN, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on January 30, 1979.

A motion for leave to withdraw pleas of guilty was heard by *Cross,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Stephen R. Kaplan,* Assistant District Attorney, for the Commonwealth.

*Thomas T. Merrigan* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Attorney General & various district attorneys, amici curiae, submitted a brief.

LIACOS, J.   About midnight of January 23, 1979, the defendant and Carl Longo drove in Longo's car to a doctor's office in Greenfield where the defendant broke into the office, looked for money, but finding none, left.   After driving around Greenfield, the two broke into the local welfare office.   While the defendant made a long distance telephone call, Longo rifled through desk drawers in another room, and removed food stamp identification cards.   The telephone call made by the defendant was to an ex-girl friend in Maryland whom he implored to marry him.   She refused. He became quite angry and told her he was going to destroy the office.   After the call, the defendant opened a filing cabinet and set fire to its contents.   With a fire burning in the file cabinet, the two drove away.   They were apprehended shortly thereafter.

The defendant pleaded guilty on May 22, 1979, to three indictments charging wilful burning of a dwelling house, G. L. c. 266, § 1, breaking and entering in the nighttime with intent to commit a felony, G. L. c. 266, § 16, and larceny in a building, G. L. c. 266, § 20.[1]   The trial judge sentenced him to serve twenty-five years in the Massachusetts Correctional Institution at Concord and imposed a three- to five-year suspended sentence to the Massachusetts Correctional Institution at Walpole.   On May 23, 1979, the defendant filed a motion to revise, revoke and withdraw his guilty plea.   The judge denied this motion after an evidentiary hearing.   In response to the defendant's motion to reconsider, the judge conducted another hearing on July 12, 1979, and denied the motion to reconsider without further findings.

---

[1] Longo was not indicted.   He was found guilty on March 19, 1979, in Franklin District Court on three complaints arising from the same incident.   The cumulative sentences as originally imposed on Longo were three months (including a previously suspended thirty-day sentence) in a house of correction and two months suspended with probation for two years.   On May 22, 1979, in a District Court hearing following Tirrell's guilty plea, the incarceration time of Longo was reduced to time actually served in consequence of his motion to revise and revoke sentence, assented to by the Commonwealth.

The defendant's original motion to withdraw his guilty plea and the accompanying affidavit were based on the prosecutor's alleged failure to comply with an order to disclose agreements of inducements or reward to prospective witnesses, namely, an agreement with Longo. At the subsequent hearing on his motion to reconsider, the defendant claimed prosecutorial vindictiveness and coercion induced the plea of guilty, a claim the defendant had briefly raised orally, and without substantiation, at the first hearing. The defendant appealed the denial of both motions. The Appeals Court upheld the findings and conclusions of the trial judge that there was no agreement of leniency made with Longo and no violation of a duty of disclosure. The Appeals Court, however, held that the pleas were produced by prosecutorial vindictiveness, and reversed the order denying the defendant's motion to withdraw his pleas. *Commonwealth v. Tirrell*, 10 Mass. App. Ct. 125, 126 (1980). We granted the Commonwealth's application for further appellate review. We affirm the trial judge's rulings.

The record shows that defense counsel and the prosecution negotiated the following plea bargain: on May 4, the Commonwealth made a "firm" offer to recommend a sentence to yield three years' actual incarceration time at M.C.I. Concord whether the defendant entered a plea or went to trial. After the defendant brought a motion for change of venue and a motion for examination to determine his capacity to form criminal intent,[2] the prosecutor informed the defendant's attorney, on May 11, that the original recommendation promised would not be made, rather the recommendation was changed to a six- to ten-year sentence at M.C.I. Walpole.[3] The prosecutor explained that he based his original offer on the belief that the defendant would not stand trial, given the strength of the Commonwealth's case. He also explained that, upon reconsideration

---

[2] A motion to suppress was also pending.

[3] Defense counsel understood the Walpole sentence to yield four years' actual incarceration time.

of the "[d]efendant's attitude," he concluded that the original offer was too lenient. He acknowledged that the defendant's filing of pretrial motions after the May 4 negotiation struck him as "dilatory" and that it angered him because he had no knowledge of the defendant's intent to bring the motions. But the prosecutor represented that anger did not impel him to change the recommendation. The defendant's attorney protested the change by letter of May 17, 1979, to which the prosecutor never responded. Defense counsel characterized the defendant's reaction to the prospect of six to ten years at Walpole as one of panic. "He quickly and rapidly evaporated from his prior position of wanting to be tried . . ., retreated to a position where he felt he was safer and forewent his constitutional right to a trial."

On May 22, 1979, the defendant did not go forward with a scheduled hearing on his motion to suppress, but decided to change his plea. Before the change, the defendant's attorney obtained the prosecutor's assurance that the Commonwealth would make the recommendation originally promised if the defendant now pleaded guilty. At the hearing on the plea, the defendant responded in the negative when asked whether he had been in any way induced or threatened to plead guilty, and defense counsel endorsed the Commonwealth's sentence recommendation. The plea was taken in accordance with the procedures set forth in Mass. R. Crim. P. 12, 378 Mass. 866 (effective July 1, 1979); the original recommendation was made. The sentence which the defendant is currently serving conforms to the Commonwealth's initial offer.

The parties make these arguments on appeal. The defendant alleges that he was entitled to disclosure of an agreement that the Commonwealth would not indict Longo for arson, and that the prosecution would assent to Longo's pending motion to revise his sentence in exchange for Longo's testimony against the defendant. The defendant further claims involuntariness in his plea, which he asserts resulted from prosecutorial vindictiveness and coercion.

The Commonwealth asserts that there was no such agreement with Longo; that, by his plea of guilty, the defendant waived his right to appeal nonjurisdictional questions, and that the plea was voluntarily given. With regard to the issues of waiver and nondisclosure, we adopt the reasoning and conclusions of the Appeals Court without discussion.[4] We focus on the questions whether the prosecutor acted vindictively and whether the pleas of guilty were involuntarily made. We also consider whether there was "breach" of a contract entered into between the Commonwealth and the defendant.

1. *Prosecutorial Vindictiveness and Due Process of Law.*

The essence of the dispute between the Commonwealth and the defendant, which divided the Appeals Court as well,[5] is whether, as a matter of Federal constitutional law, the mandate of *North Carolina* v. *Pearce*, 395 U.S. 711 (1969), and *Blackledge* v. *Perry*, 417 U.S. 21 (1974), applies to the facts of the case at bar. Alternatively, the question may be put as to whether the facts of this case are governed by the principles set forth in *Bordenkircher* v. *Hayes*, 434 U.S. 357 (1978). The majority opinion of the Appeals Court in *Commonwealth* v. *Tirrell, supra*, states, inter alia: "We hold that the *Pearce* rule applies to the plea bargaining process . . . ." *Id.* at 131. "We hold only that an unjustified change in the [prosecutor's] recommendation is vindictive and it serves no legitimate purpose." *Id.* at 132-133. "Therefore, justification for the increased recommendation after the defendant's failure to accept the original recommendation[6] must affirmatively appear on the record, and

---

[4] See *Commonwealth* v. *Tirrell*, 10 Mass. App. Ct. 125, 126-127 (1980) (upholding trial judge's finding that no undisclosed arrangement existed); *id.* at 135-136 (guilty plea does not waive claim which goes to the constitutionality of the process by which the plea was obtained).

[5] See dissent of Armstrong, J., *Commonwealth* v. *Tirrell*, 10 Mass. App. Ct. at 137.

[6] The defendant, it would appear, would dispute that he failed to accept the original recommendation; he claims he was acting in accordance

it must be 'based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original' recommendation. *Pearce*, 395 U.S. at 726." 10 Mass. App. Ct. at 134.

In considering whether the Appeals Court properly applied *Pearce* and *Perry* to this case, we note at the outset that neither case involved plea bargaining. *Pearce* involved the question whether, after a successful appeal by a defendant, a harsher sentence may be imposed on conviction resulting from a retrial. It also involved action by a judge, not a prosecutor. In *Pearce* the trial judge imposed a more severe sentence upon retrial after appeal. The Court found that the judge acted in retaliation for the defendant's exercising his right to appeal. 395 U.S. at 726. The present facts in no way suggest an abuse of the judge's sentencing power. On the same basis we reject Tirrell's reliance on *Letters* v. *Commonwealth*, 346 Mass. 403 (1963), in which we found that the trial judge improperly coerced a guilty plea by threatening a more severe sentence after trial. *Id.* at 408.

In *Blackledge* v. *Perry, supra,* the Court faulted the prosecutor who obtained a felony indictment against the defendant, upon the defendant's claim of trial de novo following conviction of a misdemeanor. The felony indictment was based on the same incident which gave rise to the misdemeanor complaint. *Id.* at 28-29. Although the facts of *Perry* better resemble those under review, we find a substantive difference between the prosecutor's augmenting the charges to which the defendant was subject and his changing only the offer to recommend sentence for an unaltered charge. Although a plea of guilty to the felony indictment was set aside in *Perry*, there was no plea of guilty at issue in *Pearce*. We view these cases, therefore, neither as plea bargaining cases, nor as cases which essentially deal with the problem of the voluntariness of pleas. Instead we view

with the original agreement, giving him the right to go to trial and retain the original sentence recommendation promised.

these cases as holding on due process grounds, that (1) a judge may not retaliate against a defendant for successfully exercising his statutory right of appeal (*Pearce*); and (2) nor may a prosecutor do so (*Perry*).

In the latter instance, we think it significant that the Court concluded that due process precluded the bringing of the enhanced charge. "The 'practical result' dictated by the Due Process Clause in this case is that North Carolina simply could not permissibly require Perry to answer to the felony charge." *Perry, supra* at 31.[7] Thus, we distil from these cases that the essential underpinnings of their decision is not found in the ascertainment of the voluntariness of a plea of guilty, but in a rule deterring abuse of the criminal process by "vindictive" behavior by the judges or prosecutors.[8]

Our conclusion that *Pearce* and *Perry* are based on a different rationale from that involved when a court is seeking to ascertain whether a guilty plea was voluntarily made and are inapposite to the plea bargaining process is reinforced by *Bordenkircher* v. *Hayes*, 434 U.S. 357 (1978). In *Bordenkircher*, the defendant refused to plead guilty to a felony charge with a potential punishment of two to ten years in prison in exchange for a prosecutorial recommendation of

---

[7] See also *Blackledge* v. *Perry*, 417 U.S. 21, 28-29 (1974), where the Court stated: "Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two-tiered appellate process. We hold, therefore, that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo*."

*United States* v. *Lippi*, 435 F. Supp. 808 (D.N.J. 1977), on which the defendant relies, supports our analysis. *Lippi* was not a plea bargaining case; the court dismissed felony charges brought in retaliation for the defendant's refusal to waive his right to a trial before a Federal District Court judge and submit to trial before a Federal magistrate on the original misdemeanor complaint. See 18 U.S.C. § 3401(b) (1976).

[8] "Vindictiveness," under *Pearce* and *Perry*, does not require actual retaliatory motivation, but only a reasonable appearance of the same; nor does it require a showing of bad faith or malice on the part of the judge or prosecutor. See *Perry, supra* at 28.

five years in prison. The prosecutor then threatened indictment of the defendant under a Kentucky recidivist statute, which would expose the defendant to mandatory life imprisonment, unless the defendant pleaded guilty to the original charge. Kentucky Rev. Stat. § 431.190 (1973) (repealed 1975). The defendant refused. He was tried on the first offense and found guilty. He was indicted and tried under the recidivist statute, found guilty, and sentenced to life imprisonment. The second sentence was attacked as being in violation of the doctrine of *Pearce* and *Perry*. The Court rejected this argument.[9]

"The Court has emphasized that the due process violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from the exercise of a legal right . . . but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction. . . . But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer. . . . Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial" (citations omitted). *Bordenkircher* v. *Hayes, supra* at 363. Cf. *Brady* v. *United States*, 397 U.S. 742 (1970); *Commonwealth* v. *Leate*, 367 Mass. 689 (1975). See III ABA Standards for Criminal Justice, Pleas of Guilty 14-3.1 (1980).

We conclude, therefore, that the principles of *Pearce* and *Perry* do not apply to the facts of this case. The defendant claims, however, his guilty pleas were coerced by the

---

[9] No argument has been made to us that a different result would ensue under the laws of this Commonwealth. We intimate no view on such an argument.

prosecution, and, hence, involuntarily entered. We turn next to consider this argument.

2. *The Voluntariness of Defendant's Pleas.*

While acknowledging the use and effectiveness of plea bargaining, the United States Supreme Court has required demonstration of the voluntariness of a guilty plea. *Boykin* v. *Alabama,* 395 U.S. 238, 243-244 (1969) (trial judge must establish record of voluntariness of guilty plea). See *Parker* v. *North Carolina,* 397 U.S. 790, 796-798 (1970); *McMann* v. *Richardson,* 397 U.S. 759, 766-767 (1970); *Brady* v. *United States,* 397 U.S. 742, 748 (1970). In expounding the parameters of voluntariness, however, neither this court nor the Supreme Court has required total absence of psychological or emotional pressure. In any plea bargaining situation the defendant is necessarily put to a difficult choice — the risk of a more serious sentence after trial and conviction against the probabilities of the trial judge's accepting the prosecutor's recommended leniency. The defendant's fond hopes for acquittal must be tempered by his understanding of the strength of the case against him, his prior record, and the completely unknowable reaction of the trier of fact. See *Commonwealth* v. *Leate,* 367 Mass. 689, 694 (1975). Without some showing of peculiar susceptibility, which rendered the defendant "so gripped by fear of the . . . penalty or hope of leniency that he . . . could not . . . rationally weigh the advantages of going to trial against the advantages of pleading guilty," *Brady, supra* at 750, we cannot say that the pressure of the decision per se destroys voluntariness. Contrast *Pate* v. *Robinson,* 383 U.S. 375, 385-386 (1966) (record of irrational conduct required hearing on defendant's incompetency to stand trial).

Here defense counsel depicts the defendant as so frightened that he impulsively decided to change his plea in "impromptu reaction to the prosecutor's threat of a Walpole sentence." The record, however, does not support this claim.[10] The bare representation of counsel as to Tirrell's

---

[10] The trial judge made no specific findings regarding Tirrell's voluntariness. He simply concluded after hearing Tirrell's motion to reconsider that "[b]ased on the arguments of counsel and the affidavit [of defense

fear of Walpole does not make out coercion different in kind or degree from the inevitable decision-making pressures described above.  Compare *Commonwealth* v. *Hubbard*, 371 Mass. 160, 170-171 (1976) (even if suffering from amnesia as to commission of crime, defendant was competent to plead guilty if he was able to consult with attorney and weigh options); *Commonwealth* v. *Leate*, 367 Mass. 689, 696 (1975) (without supporting evidence of defendant's low mental ability, court upheld trial judge's finding of sufficient capacity to understand consequences of guilty plea).  See *Jones* v. *Estelle*, 584 F.2d 687, 690 (5th Cir. 1978) (coercion established if fear of greater penalty destroyed defendant's ability to weigh relative advantages of trial and plea).  Cf. *Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977) (defendant's declaration in open court carries strong presumption of verity and court may dismiss subsequent unsupported conclusory allegations of coercion).

3.  *The Contract Aspect of the Plea.*

The defendant argues that the "firm" agreement of the prosecution to recommend a sentence that would produce

---

counsel] I find no reason to change my findings or to reconsider my ruling."  Although failure to make specific findings appears to contravene Mass. R. Crim P. 30 (b), 378 Mass. 900 (effective July 1, 1979), remand is unnecessary in this case.  The record as a whole supports the judge's conclusion.  See *Commonwealth* v. *Williams*, 378 Mass. 217, 224 n.4 (1979).

The judge's ultimate conclusion was based on three different hearings.  The original hearing on Tirrell's change of plea was a model inquiry into the knowingness and voluntariness of the plea.  As noted in the text, neither the defendant nor his counsel raised any suggestion of coercion at the time of the plea.  After the second hearing, the judge made detailed findings regarding the prosecutor's alleged agreement with Longo.  Because the same judge presided over all three hearings, we consider the entirety of this record in determining that there was ample evidence to support the judge's conclusion of voluntariness.  *Williams, supra* at 225-226.  See *Commonwealth* v. *Mahnke*, 368 Mass. 662, 689-691 (1975), cert. denied, 425 U.S. 959 (1976) (trial judge's conclusions of voluntariness based on oral testimony deserve deference); accord, *Commonwealth* v. *Tabor*, 376 Mass. 811, 822 (1978).  Cf. *Commonwealth* v. *McCarthy*, 375 Mass. 409, 416 (1978) (remand for findings unnecessary where judge's reasons are clear from the record).

three years of incarceration at M.C.I. Concord whether the defendant went to trial or pleaded guilty was violated. He further argues that this breach "completely undermined" the defendant's rights.

We agree with the defendant's argument that plea bargaining is often analogized to a contractual negotiation. See, e.g., *Santobello* v. *New York*, 404 U.S. 257, 262-263 (1971); *Jones* v. *Estelle*, 584 F.2d 687, 689 (5th Cir. 1978). On May 4, the Commonwealth made a "firm" offer.[11] Whether the Commonwealth was contractually or honor bound at that point to abide by its offer depends on whether Tirrell acted in reliance on the prosecution's statement. See *Santobello, supra* at 262; *Commonwealth* v. *Benton*, 356 Mass. 447, 448 (1969). In *Santobello* and *Benton*, the defendant went forward with a guilty plea, only to find that the prosecutor had set different, harsher terms. Those cases are inapposite. On the record before us we find no similar detrimental reliance. The defendant did not change position to his detriment between the time the agreement was made and the guilty pleas entered. The recommendation made was in accordance with the original agreement. The sentences imposed were consistent with the agreement. Had the defendant gone to trial and, being convicted, received a more severe sentence as a result of an enhanced prosecutorial recommendation in violation of the "firm" agreement, we might well take a different view.

Having concluded that the trial judge was correct in finding that the pleas were not coerced, we are unable to perceive how the "contract" claim furthers the defendant's cause. The orders denying the defendant's motions are affirmed.

*So ordered.*

---

[11] Tirrell does not refute that the District Attorney attached a caveat to his May 4 offer: it was firm unless "information occurred during the trial which substantially changed the situation."

KAPLAN, J. (dissenting). The Commonwealth makes a "firm offer," which I take to mean a commitment, to recommend a sentence to yield three years at Concord whether the defendant pleads guilty or goes to trial and is convicted. This may be a very foolish commitment in the circumstances, but foolish or not it is made. When it appears that the defendant is headed toward trial, a development the Commonwealth did not expect, the Commonwealth announces that it will recommend a longer sentence at Walpole. The defendant pleads, and the Commonwealth recommends the three years and that is the sentence imposed.

It seems to me that the defendant, after giving himself some time for reflection, should be allowed to withdraw the plea, if he is willing upon advice of counsel to take the risks to himself that that may entail.

The Commonwealth is in the wrong for having reneged on its commitment or having threatened to do so. In such a situation I would not speculate about whether the defendant was actually hurt — whether he would in fact have gone to trial if no breach or threatened breach of the commitment had occurred, and whether, had he gone to trial, he might have succeeded on the merits.

With respect, I believe the substance of the case has slipped through the mesh of the analytics of the court's opinion. It is only of mild interest whether any constitutional right may have been implicated. This dissent need not rest on the Constitution. It merely insists that the Commonwealth take care to behave itself.

I should add that, despite vehement argument by the Commonwealth to the contrary, I do not perceive how the view I have expressed would interfere with the fair conduct of plea bargaining or prosecution.