UNITED STATES of America, Plaintiff-Appellee,

v.

Tobbie T. JONES, Sr., Charles Drew Home Health Agency, Inc., and Tobbie T. Jones, Jr., Defendants-Appellants.

No. 78–5235
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

William M. Ravkind, Dallas, Tex., for Jones, Sr.

Samuel W. Hudson, III, Dallas, Tex., for Charles Drew.

Ronald L. Goranson, Dallas, Tex. (Court-appointed) for Jones, Jr.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Shirley Baccus-Lobel, Richard Stephens, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and RUBIN, Circuit Judges.

PER CURIAM:

Appellants were convicted in the Northern District of Texas of conspiring to defraud the United States and of three counts of knowingly submitting false statements to an agency of the United . States. 18 U.S.C. §§ 2, 371, 1001. Tobbie T. Jones, Sr. and Tobbie T. Jones, Jr. established and operated the Charles Drew Home Health Agency in Dallas, Texas. The Agency was a non-profit corporation formed to provide health care to elderly area residents. The Agency's revenues were provided almost entirely through the federal Medicare and Medicaid programs, administered by the United States Department of Health, Education, and Welfare. During the period covered by the indictment, September 1976 through June 1977, the programs paid the Agency $28.00 for each "Home Health Visit" by Agency employees. The total amount paid to the Agency during this period was nearly $400,000.

In order to bill HEW for nursing services provided to a patient, a health provider must submit a "Plan of Treatment" form to HEW for that patient. Although this form need not be signed by a doctor on initial submission, a doctor must sign it before the health provider bills HEW for any services. The majority of the patient files for which appellant billed HEW did not contain this required certification by a physician. In many other instances, the number of visits for which appellants billed HEW exceeded the number specified on the Plan of Treatment forms submitted to HEW for authorization. Frequently, a patient for whom a Plan of Treatment form was submitted was actually not in need of any care. Several Agency employees testified that the documents submitted to HEW contained false entries reflecting nursing care visits that had not, in fact, been made. The individual appellants denied any knowledge that the billings submitted to HEW were incorrect. Employees of the Agency, however, testified that they prepared these false documents at the express direction of both individual appellants. The employees stated that appellants provided the employees with lists of patients and the number of

visits for which appellants had billed HEW and told the employees to chart notes to reflect all visits that had been billed but not made. Some employees complained to appellants that they had too many patients to visit as often as outlined in the Plan of Treatment forms. Appellants told these employees to call the patients by telephone or not visit at all, but to record on the patients' notes that a visit had been made. After some patients were discharged, appellants ordered employees to reopen the patients' files, alter the discharge dates, and chart notes showing that visits to the patients had been made after the date of actual discharge.

Several employees also testified that both appellants asked them to endorse checks made payable to them and to return the checks to appellants. The checks bore a notation that they were reimbursement for travel expenses. None of the employees received compensation for travel, and none received the proceeds of these checks. The rate at which HEW reimbursed the Agency was determined in part by reference to these "reimbursements" for travel. After the employees had signed the checks, Jones, Sr. deposited them in his personal bank account. He testified that he was holding the money in order to purchase group health insurance for the employees.

The Agency directly paid for a house and a car used by Jones, Sr. and gave loans to Jones, Jr. Some of the corporate books reflected that these payments were loans, but the corporate records include no promissory notes or evidence of repayment. Jones, Jr. testified that he repaid the loans by working overtime. Because the corporate books indicated that these payments were loans, they had no effect on the reimbursement the Agency received from HEW. Appellants now argue that the prosecutor and trial judge committed several errors.

1. *Reindictment*—The grand jury originally indicted appellants on three counts, the conspiracy count and two substantive counts each alleging the falsification of the records of a particular patient. Appellants

pled not guilty to the crimes charged by this indictment. Four months later, the prosecutor obtained a second indictment that included a fourth count alleging that appellants had falsified a third patient's records during the same period covered by the first three counts. Three months after this indictment, the grand jury entered a third indictment, which repeated the allegations of the second indictment with greater detail. Appellants were convicted under this third indictment.

■ Tobbie Jones, Jr. now argues that this reindictment was a violation of due process and requires reversal of his conviction because there is a danger that such reindictment may be used to chill a defendant's exercise of his right to plead not guilty. Similar contentions have been considered by this court in *Jackson v. Walker,* 585 F.2d 139 (5 Cir.1978); *United States v. Nell,* 570 F.2d 1251 (5 Cir. 1978); and *Hardwick v. Doolittle,* 558 F.2d 292, rehearing denied per curiam, 561 F.2d 630 (5 Cir. 1977), cert. denied, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978).

Although the analysis used by the *Jackson* panel is somewhat different than that articulated by the prior panels, all the decisions indicate that the ultimate decision whether the reindictment was impermissible depends on the circumstances of the second indictment. In this case, those circumstances clearly negate any possibility that the reindictment either was actually vindictive or will make future defendants apprehensive about the likelihood of prosecutorial retaliation for a defendant's exercise of his constitutional rights. Jones, Jr. "does not allege that there actually was vindictiveness in the filing of the superseding indictment." Defendant's Memorandum of Law in Support of Motion to Dismiss Indictment, Second Supp. Record on Appeal, Vol. I at 52. Furthermore, it is undisputed that the prosecutor knew even before the grand jury returned the first indictment that Jones, Jr. intended to plead not guilty, and that the prosecutor sought the reindictment solely because of evidence discovered after the first indictment was returned.[1] Therefore, the trial court was correct in refusing to dismiss the third indictment.[2]

■ 2. *Instructions*—Jones, Jr. argues next that various components of the court's charge to the jury were incorrect. First, the trial judge told the jury that she would read only parts of the indictment to them, but that they were to "consider the entire indictment . . . as though each part had been read in full in this charge and consult the attached copy of the indictment for the complete wording of each individual allegation." Appellant asserts that this instruction was incorrect because it implied that the indictment was evidence and because it overemphasized the indictment. This complaint is without merit. This court has held many times that it is not error for the trial judge to read the entire indictment to the jury if the judge also instructs the jury that the indictment is not to be considered as evidence. *Kroll v. United States,* 433 F.2d 1282 (1970), cert. denied sub. nom., *Adler v. United States,* 402 U.S. 944, 91 S.Ct. 1616, 29 L.Ed.2d 112, *Kroll v. United*

---

1. Or, to follow the *Jackson* analysis more closely: The strong prosecutorial interest in indicting a defendant for additional crimes greatly outweighs any due process interest of defendants when that reindictment is prompted by newly discovered evidence and the prosecutor knew before the first indictment that the defendant intended to plead not guilty. Therefore, like *Jackson,* the reindictment establishes only a prima facie case of vindictiveness. This prima facie case is thoroughly rebutted, however, by defendant's own admission that there was no actual vindictiveness and by the prosecutor's evidence of his motives for seeking the reindictment. There is, therefore, no need to remand to the district court to allow the presentation of additional evidence.

2. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 666, and n.5, 54 L.Ed.2d 604 (1978), does not affect this conclusion. Insofar as that case is relevant to the present situation, which does not involve plea bargaining, the Supreme Court merely repeated its holdings in *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The *Jackson* and *Hardwick* panels thoroughly discussed *Perry* and *Pearce* in announcing the rule we follow in this case.

*States,* 402 U.S. 944, 91 S.Ct. 1618, 29 L.Ed.2d 112, *Cahn v. United States,* 402 U.S. 944, 91 S.Ct. 1619, 29 L.Ed.2d 112 (1970). Here, the trial judge did charge that the indictment "is not evidence of any kind against the accused." The mere fact that the judge told the jury to read the indictment themselves, rather than reading it to them, could not have prejudiced appellant.

■ Second, appellant argues that, with respect to the three substantive counts, the judge gave an incomplete charge on the concept of aiding and abetting. The trial court refused to instruct the jury that:

> You of course may not find any defendant guilty unless you find beyond reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant participated in its commission.

Because appellant was found guilty on the conspiracy charge and because it is undisputed that false documents were in fact submitted to HEW, the jury need only to have found that the documents were submitted in furtherance of the conspiracy in order to convict appellant of the substantive offenses. *United States v. Sullivan,* 578 F.2d 121 (5 Cir. 1978). The trial court properly instructed the jury on this relationship between the conspiracy and substantive counts. Therefore, failure to give an instruction requiring any greater degree of culpability was harmless.

■ Third, appellant alleges that the trial court instructions allowed the jury to convict him on a theory different than that alleged in the indictment. He argues that the instruction authorized conviction if the jury found that the Agency billings misstated the number of visits accomplished by its employees. Thus, the jury may have found that the Agency billed HEW for fewer visits than actually occurred, while the indictment accused appellants of billing far more than the actual number of visits. This contention is frivolous. The instruction clearly requires the jury to find that the Agency billed for the same number of visits alleged in the indictment. Furthermore, the evidence at trial showed only excessive billing.

■ Last, appellant argues that the trial judge erred by instructing the jury that, in assessing the credibility of appellant's own testimony, they were entitled to take into consideration the fact that he had a "very keen personal interest" in the outcome of the suit. This circuit has held contrary to appellant's position, *United States v. Wiggins,* 566 F.2d 944 (5 Cir. 1978), *cert. denied,* 436 U.S. 950, 98 S.Ct. 2859, 56 L.Ed.2d 793 (1978), and appellant has not made any novel arguments that would allow us to deviate from this precedent.

Therefore, the trial court's instructions do not justify a reversal of the conviction.

■ 3. *Admission of Evidence* —All appellants complain that the trial judge erred in admitting evidence that the Agency had paid for a house and car used personally by Jones, Sr., and that the Agency had paid credit card bills for Jones, Sr. Appellants argue that this evidence was irrelevant to the crimes charged by the indictment because the corporate books clearly showed the expenditures as loans and did not affect the amount of reimbursement by HEW. Even if the evidence was relevant, appellants argue that it was unduly prejudicial. Fed.R.Evid. 403. These contentions are without merit. The evidence was relevant because appellants' major defense was lack of motive to defraud. The evidence establishes that the individual appellants benefitted personally from the over-billings and therefore had a motive. Because the Agency was a non-profit corporation, any revenues it obtained from the fraud would not have directly benefitted the individual appellants. Because Jones, Sr. and Jones, Jr. maintained a very informal financial relationship with the corporation, however, they were able to siphon off the extra revenues of the Agency to use for their personal benefit. It makes no difference whether this "siphoning" was legal under state or federal law, in any case it was relevant to show the individual appellants' motives in conducting the fraud. Because a major as-

pect of appellants' defense was lack of motive, and this evidence was the best, if not the only way to show motive, its use was not unduly prejudicial.

Appellants also argue that the admission of evidence showing that Jones, Sr. had received unemployment compensation during the period for which he later requested HEW to reimburse him for services was error. Only Jones, Jr. objected to this evidence at trial, and he received the limiting instruction he requested. Even if error, however, the admission of this evidence was harmless in light of the overwhelming evidence of appellants' guilt. *See United States v. Wilson,* 578 F.2d 67 (5 Cir. 1978).

The trial court is therefore **AFFIRMED**.