COMMONWEALTH vs. HERBERT H. TIRRELL.

Franklin. December 14, 1979. — June 30, 1980.

Present: ARMSTRONG, PERRETTA, & DREBEN, JJ.

*Practice, Criminal,* New trial, Plea, Agreement between prosecutor and
defendant. *Due Process of Law,* Agreement between prosecutor and
defendant. *District Attorney.*

In a proceeding on a defendant's motion to withdraw his guilty pleas,
there was sufficient evidence to warrant a finding that the Common-
wealth had not made an undisclosed arrangement for leniency with an
anticipated principal witness against the defendant. [126-127]
Where a prosecutor had informed a defendant that the Commonwealth's
sentence recommendation was a firm one and would be the same
whether the defendant proceeded to trial or pleaded guilty, and, after
it became apparent that the defendant intended to go to trial, the pros-
ecutor then informed the defendant that the Commonwealth's recom-
mendation after a trial would be substantially harsher than the recom-
mendation originally promised, the defendant's pleas of guilty were
involuntary because motivated by prosecutorial vindictiveness.
[127-137] ARMSTRONG, J., dissenting.

INDICTMENTS found and returned in the Superior Court
Department on January 30, 1979.

A motion for leave to withdraw pleas of guilty was heard
by *Cross,* J.

*Thomas T. Merrigan* for the defendant.

*Stephen R. Kaplan,* Assistant District Attorney (*Edward
F. Berlin* with him) for the Commonwealth.

PERRETTA, J. On May 22, 1979, the defendant pleaded
guilty to indictments charging him with the malicious burn-
ing of a dwelling house, G. L. c. 266, § 1, larceny in a
building, G. L. c. 266, §§ 16, 20, and breaking and entering
in the nighttime with the intent to commit a felony, G. L.
c. 266, § 16. The judge imposed sentence in accordance
with the recommendation of the Commonwealth. Two

days later the defendant sought to withdraw his guilty pleas on the basis that at the time of his pleas he was unaware of the fact that the Commonwealth had made promises or inducements to an anticipated principal witness against him. After an evidentiary hearing on the motion, the judge found that the Commonwealth had made no promise or inducement to this witness, and he denied the motion to withdraw the guilty pleas. A week later the defendant filed a motion for reconsideration, alleging that his pleas had been involuntary because motivated by prosecutorial vindictiveness in the form of an increased sentence recommendation after trial if the defendant should elect to proceed to trial.[1] The judge denied this motion after hearing arguments of counsel. We hold that the prosecutor's intended increase of the sentence recommendation was unjustified and constituted prosecutorial vindictiveness, and we reverse the order denying his motion to vacate.

Because we reverse the decision of the judge on the issue of the prosecutor's increase of the sentence recommendation, we deal only briefly with the issue of an alleged agreement between the Commonwealth and the defendant's accomplice. The judge held a full evidentiary hearing on Tirrell's claim of an undisclosed arrangement for leniency by the Commonwealth for the accomplice in exchange for his testimony against the defendant. Our review of the transcript of this hearing and the Commonwealth's responses to the defendant's pretrial motions lead us to the conclusion that the judge's findings of fact on this issue were supported by the evidence. See *Commonwealth* v. *Buonopane*, 9 Mass. App. Ct. 651, 654 (1980). The judge did not err in concluding that the Commonwealth had not made any promise or inducement to the defendant's accomplice relative to the offenses with which he was charged or in connection with its assent to his motion to reduce his sentence. See

---

[1] Although this allegation was not set out on the face of the defendant's first motion, it was asserted and argued by defense counsel at the evidentiary hearing held on the first motion.

*Mastrian* v. *McManus*, 554 F.2d 813, 823 (8th Cir.), cert. denied sub nom. *Mastrian* v. *Wood*, 433 U.S. 913 (1977), cited with approval in *Commonwealth* v. *Haywood*, 377 Mass. 755, 759 n.4 (1979) ("mere general expectation of leniency need not be revealed to jury absent express or implied promise"). The Commonwealth's assent to the accomplice's motion to revise his sentence was based upon its sentence recommendation at the time of the accomplice's pleas of guilty on the charges against him. See *Santobello* v. *New York*, 404 U.S. 257 (1971); *United States* v. *Ewing*, 480 F.2d 1141, 1143 (5th Cir. 1973) ("both of these proceedings [original sentence and motion to reduce it] were integral parts of the sentencing process in this case").

The defendant's second contention is that on May 4, 1979, the prosecutor told defense counsel that the Commonwealth's sentence recommendation upon the defendant's pleas of guilty would be one that would result in his incarceration at M.C.I., Concord, for three years. This would be accomplished by recommending that the defendant be sentenced on the various indictments for an aggregate of twenty-five years. When defense counsel asked what the recommendation would be if the defendant were to proceed to trial and be found guilty, the prosecutor replied that the recommendation was a "firm" one. It would be the same if the defendant proceeded to trial or if he should plead guilty. The defendant alleges that when it became apparent to the prosecutor on May 8 that the defendant intended to go to trial, the prosecutor informed defense counsel that, if the defendant were to be found guilty, the Commonwealth's recommendation would be that the defendant be incarcerated at M.C.I., Walpole, for a term of six to ten years. The defendant asserts that this threat of an increased recommendation resulted in his guilty pleas. He alleges that his pleas were involuntary, as they were the product of the fear instilled in him by the prosecutor's actions.

The judge made no findings of fact on this issue. Notwithstanding the labels attached to these motions, they were implicitly motions for a new trial, see *Commonwealth* v. *Penrose*, 363 Mass. 677, 681 (1973); *Commonwealth* v. *Huot*, 380

Mass. 403, 406 (1980), and factual findings on the defendant's claim should have been made. See *Earl* v. *Commonwealth*, 356 Mass. 181, 183 (1969); Mass.R.Crim.P. 30(b), 378 Mass. 900 (effective July 1, 1979). Compare *McHoul* v. *Commonwealth*, 365 Mass. 465, 468 (1974), with *Commonwealth* v. *Porter*, 9 Mass. App. Ct. 908 (1980). We need not, however, remand this case for findings because even if we accept the truth of all the prosecutor's factual assertions, they would not, as matter of law, constitute justification for an increased recommendation. Additionally, the Commonwealth urges in its brief that the judge's general finding imported a finding of all the facts necessary to support his determination which was conclusive if supported by any reasonable view of the evidence, *J. P. O'Connell Co.* v. *Maryland Cas. Co.*, 302 Mass. 232, 234 (1939), and that the judge could legitimately give evidentiary weight to the statements of counsel where there was neither contradiction nor objection, as here. *Harper* v. *Harper*, 329 Mass. 85, 88 (1952). *Abdallah* v. *Boumil*, 4 Mass. App. Ct. 499, 500 (1976).

We recite the facts as the prosecutor alleged them during arguments on the motion to vacate and the motion to reconsider. He related that the staff of the district attorney's office had reviewed the defendant's case at its outset and that it had been the consensus of the office that the defendant should be incarcerated in a house of correction for a minimum of four years. The prosecutor stated that in spite of this consensus, he had made "firm recommendation" of three years incarceration at Concord because he believed that "there was no way in the world that this man was going to go to trial." His belief was based upon the facts that there were thirty-five pending charges against the defendant and that the Commonwealth had a strong case. The prosecutor explained to the judge that his original recommendation of May 4 had been based upon the fact that if the defendant were willing to plead guilty and to demonstrate a sense of rehabilitation, he (the prosecutor) would be willing to fight in his office for a lower recommendation. He gave the firm recommendation "relying in my own mind that the Defendant would plead guilty, thinking that he

would demonstrate this change in his attitude." The prosecutor stated that on May 8, when defense counsel filed a motion for a change of venue and a motion for an examination of the defendant pursuant to G. L. c. 123, § 15, he had become angry because he viewed those motions as dilatory. He demanded that the motions be heard that day, and they were denied on May 8.[2] He represented, however, that his anger had nothing to do with the increased recommendation. Rather, "[w]hen it became apparent that [the defendant] would go to trial, I began to have conscience problems." He reviewed the defendant's "posture" and had a lengthy discussion with his office, after which it was determined that the first staff recommendation should be enforced.[3] He advised defense counsel on May 11 that the Commonwealth's recommendation after a trial and verdict of guilty would be a term of six to ten years at Walpole. On May 22 the parties were in court prepared to go forward on the previously filed and scheduled motion to suppress, when the defendant indicated that he wished to plead guilty.[4]

Defense counsel stated in his affidavit in support of his motion to reconsider that on the morning of May 22 the defendant advised him that "he was scared to stand trial and risk a Walpole sentence," and that the defendant pleaded "notwithstanding [counsel's] disapproval or misgivings." Defense counsel stated to the judge that the defendant would not listen to his advice because "he just didn't know what was going to be

---

[2] The Commonwealth states in its brief that the allowance of either of these motions would have "pushed the case off the sitting" and that there would have been a delay of several months.

[3] The prosecutor, as noted, represented that he told the defendant that the three year Concord recommendation was "firm," and the record does not reflect that the staff's original recommendation, a minimum of four years' incarceration in a house of correction, had ever been communicated to defense counsel or the defendant.

[4] The increased recommendation related only to a sentence after trial, and was not tied to the defendant's motion to suppress. When the defendant offered his pleas of guilty, the judge advised him that, if the judge could not accept the Commonwealth's sentence recommendation, the defendant would be allowed to withdraw his guilty pleas.

the outcome should he exercise his right to trial, should he continue to go forward, inasmuch as there had been such a total, unexplainable, drastic and substantial change without any external justification for it."

The defendant argues that the increase in the recommendation was the result of prosecutorial vindictiveness because it penalized the exercise of his right to trial and violated his right to due process of law. See *North Carolina* v. *Pearce*, 395 U.S. 711 (1969); *Blackledge* v. *Perry*, 417 U.S. 21 (1974). The Commonwealth argues that increasing the original recommendation was permissible as it was within "the 'give-and-take' of plea bargaining" and that the defendant was "free to accept or reject the prosecution's offer" of May 11. See *Bordenkircher* v. *Hayes*, 434 U.S. 357, 363 (1978); *Commonwealth* v. *LeRoy*, 376 Mass. 243, 246 (1978).

*North Carolina* v. *Pearce, supra*, 395 U.S. at 724-726, holds that a harsher sentence upon reconviction following a successful appeal would violate the due process clause of the Fourteenth Amendment to the United States Constitution if it were imposed as a punishment for the successful appeal. Such judicial vindictiveness causes direct injury to the penalized defendant and impermissibly places a chill upon the exercise of the right of appeal of all convicted defendants who may refrain from exercising this right out of fear of retaliation by the sentencing judge. Due process of law, therefore, not only demands that a sentence imposed upon retrial be free of vindictiveness; it requires that all convicted defendants be free of apprehension of a retaliatory motivation on the part of a sentencing judge. To guarantee the absence of this improper motivation, *Pearce* requires that when a judge imposes a harsher sentence upon a defendant after his retrial, his reasons for doing so must affirmatively appear. The holding rests on the fundamental principle that a person cannot be penalized for choosing to exercise constitutional rights. *Id.* at 724. See also *Chaffin* v. *Stynchcombe*, 412 U.S. 17, 32-33 n.20 (1973); *Bordenkircher, supra*, 434 U.S. at 363. *Blackledge* v. *Perry, supra*, extended *Pearce* to afford protection against prosecutorial vindictiveness or its appearance by holding that reindictment for

a more serious offense following exercise by a defendant of his right of appeal by trial de novo on the original offense would similarly violate due process. Protection against vindictiveness has not been limited to the exercise of the statutory right of trial de novo or other forms of appeal. See *United States* v. *Jones*, 587 F.2d 802, 805 (5th Cir. 1979);[5] *United States* v. *Thomas*, 593 F.2d 615, 624 n.28 (5th Cir. 1979).

We hold that the *Pearce* rule applies to the plea bargaining process, a process recognized as "mutually beneficial to both the defendant and the State." *Corbitt* v. *New Jersey*, 439 U.S. 212, 222 (1978). See also *Brady* v. *United States*, 397 U.S. 742, 751-752 (1970); *Santobello* v. *New York*, 404 U.S. 257, 260-261 (1971); *Blackledge* v. *Allison*, 431 U.S. 63, 71 (1977);[6] Prosecutorial Discretion, Plea Bargaining and the Supreme Court's Opinion in *Bordenkircher* v. *Hayes*, 6 Hastings Const. L. Q. 269, 287-292 (1979); Nemeroon, Coercive Sentencing, 64 Minn. L. Rev. 668, 715-719 (1980). Plea bargaining proceeds under circumstances that put a defendant to difficult choices which have been "upheld as an inevitable attribute to any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin* v. *Stynchcombe*, 412 U.S. 17, 31 (1973), citing to *Santobello* and *Brady*. While this process can certainly be used "to persuade the defendant to forgo his right to plead not guilty," *Bordenkircher*, 434 U.S. at 364, *Commonwealth* v. *LeRoy*, 376 Mass. 245, 246 (1978), it cannot be

---

[5] In *Jones* the defendant pleaded not guilty to an indictment and a short time later the prosecutor secured additional indictments. The defendant sought to dismiss the subsequent indictments on the basis that additional indictments could be used to chill a defendant's exercise of the right to plead not guilty. The motion was denied because the defendant could not show prosecutorial vindictiveness. The prosecutor knew that the defendant intended to plead not guilty before he secured even the first indictment. Further, the additional indictments were secured on the basis of evidence which the prosecutor discovered subsequent to the first indictment.

[6] While contract principles are sometimes employed in resolution of plea bargaining issues, *Santobello, supra*, those principles do not override or dispose of a constitutional claim that one has been penalized for exercising his right to trial. *Pearce, supra*.

used as a punitive method of retaliation upon a defendant simply because he fails to accept the recommendation offered in exchange for his plea. An increase in a sentence recommendation based upon such a factor is not the exertion of pressure inherent in plea bargaining; it is the imposition of a penalty upon the defendant's exercise of his right to trial.[7] Due process of law prohibits a prosecutor from increasing the original sentence recommendation solely because the defendant intends to go to trial, and it requires that when an increased recommendation is made, the prosecutor's reasons must affirmatively appear. This is so that all defendants charged with a crime will be free of the apprehension of such a retaliatory motivation on the part of the prosecutor should they elect to proceed to trial. *Pearce,* 395 U.S. at 725.

We do not intimate that the Commonwealth must engage in plea bargaining with a defendant, see *Commonwealth* v. *Coyne,* 372 Mass. 599, 601 (1977), nor do we imply that the due process clause of the Fourteenth Amendment is violated when the prosecutor, at the outset of plea bargaining, sets forth harsh alternatives. See *Bordenkircher,* 434 U.S. at 360-364. Compare *id.* at 370-371 n.2. (Powell, J., dissenting). These harsh alternatives may be "actualized" when a guilty plea is withdrawn, see *United States* v. *Gerard,* 491 F.2d 1300, 1305-1306 (9th Cir. 1974), and they may be increased or withdrawn when the defendant's conduct justifies it. *Pearce,* 395 U.S. at 726. We hold only that an unjustified change in the recommendation is vindictive and it

---

[7] *Brady,* 397 U.S. at 751 n.8, did not view this type of conduct as a pressure inherent to the process. "We here make no reference to the situation where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty. In *Brady's* case there is no claim that the prosecutor threatened prosecution on a charge not justified by the evidence or that the trial judge threatened Brady with a harsher sentence if convicted after trial in order to induce him to plead guilty." See also *Letters* v. *Commonwealth,* 346 Mass. 403 (1963).

serves no legitimate purpose.[8]  See note 11, *infra.*  "As was said in *Commonwealth* v. *St. John,* 173 Mass. 566, 569-570 [1899], 'When such promises are made by the public prosecutor or with his authority, the court will see that due regard is paid to them, and that the public faith which has been pledged by him is duly kept. . . .' . . . The highest degree of ethics should be the standard of the sovereign which should serve as an example to all others.  The courts have the duty to enforce that standard." *Commonwealth* v. *Benton,* 356 Mass. 447, 448-449 (1969).

The Commonwealth's attempt to rely upon *Bordenkircher* fails here.  In *Bordenkircher,* 434 U.S. at 359-360, the Court focused upon the facts that the defendant was told by the prosecutor at the outset of the plea negotiations what his choices were and the consequences of each and that his election to go to trial "led to his indictment" on the more serious offense, just as he had been told it would.  In setting out these facts, the Court invited comparison, without endorsement, of the holdings in *United States ex rel. Williams* v. *McMann,* 436 F.2d 103 (2d Cir. 1970), and *United States* v. *Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976).  *Bordenkircher, supra,* 434 U.S. at 360 n.5.  These cases were decided on the basis of whether there was a justified change in the prosecutor's position in respect to the offense to be charged.

The sequence of events in the present case created "a significant possibility that [the prosecutor's] discretion may

---

[8] "[I]t is clear that the legitimate purposes of plea bargaining are not served if a prosecutor abuses his powers in order to coerce an unwilling defendant into foregoing his constitutional right to trial." *Hayes* v. *Cowan,* 547 F.2d 42, 44 (6th Cir. 1976), reversed sub nom. *Bordenkircher, supra.*  In reversing the court below, *Bordenkircher,* 434 U.S. at 361, the Court did not take issue with this statement; rather, it concluded that no abuse of power had occurred.  "The ultimate conclusion of the Court of Appeals thus seems to have been that a prosecutor acts vindictively and in violation of due process of law whenever his charging decision is influenced by what he hopes to gain in the course of plea bargaining negotiations."  As is clear from our opinion, we attribute the different results in *Hayes* and *Bordenkircher* to the emphasis the Supreme Court placed upon the fact that the defendant was advised of his options from the outset.  See also *Brady, supra,* 397 U.S. at 751 n.8 (see note 7, *supra*).

have been exercised with a vindictive motive or purpose."
*Ruesga-Martinez,* 534 F.2d at 1369. See also *Lovett* v. *But-
terworth,* 610 F.2d 1002, 1007 (1st Cir. 1979).[9] Therefore,
justification for the increased recommendation after the de-
fendant's failure to accept the original recommendation must
affirmatively appear on the record, and it must be "based
upon objective information concerning identifiable conduct
on the part of the defendant occurring after the time of the
original" recommendation. *Pearce,* 395 U.S. at 726.

The prosecutor twice represented to the judge his reasons
for the increased recommendation, and at each hearing he
offered the same and only reason as justification for the in-
crease: the continued actions of defense counsel in prepar-
ing for trial demonstrated to him that the defendant did not
possess the rehabilitative attitude upon which he had based
his original recommendation.[10] The prosecutor's mistaken
assessment of the certainty of guilty pleas does not constitute
an acceptable basis for his actions. The prosecutor had spe-
cifically advised defense counsel that the recommendation
would not change if the defendant should exercise his right
to trial, and he cannot now cite the defendant's election to
proceed to trial as justification for increasing the recommen-
dation. Moreover, the prosecutor's explanation that the
changed recommendation was no more than a return to the
staff's original recommendation is irrelevant, as there was
no justification for such a return. (We note in passing that
we do not view a minimum of four years incarceration in a
house of correction as comparable to six to ten years at
Walpole.)

---

[9] We do not mean to suggest that the prosecutor acted with personal
animus to the defendant by our use of the word "vindictiveness." As used
by the Court in *Pearce, supra,* it is a term meaning an absence of justifica-
tion. See *Blackledge,* v. *Perry,* 417 U.S. at 28; *Jackson* v. *Walker,* 585
F.2d 139, 142 n.3 (5th Cir. 1978).

[10] The prosecutor does not allege that his perception of the defendant's
motions of May 8 as deliberately dilatory was the cause of the increased
recommendation. Indeed, he specifically denies this, and we need not
consider whether the filing of motions regarded by the prosecutor as
dilatory could constitute justification for increasing a recommendation.

While a prosecutor has the power to indicate by his sentence recommendation the risks of not pleading guilty, *Pearce* and *Blackledge* v. *Perry* do not allow the use of that power to redefine those risks at will.[11]   Cf. *Ruesga-Martinez*, 534 F.2d at 1370-1371.   The only justification given for the increased recommendation was the defendant's failure to accept the original one.   The prosecutor's action was not, therefore, as matter of law, based upon the justification required by *Pearce*.

The Commonwealth relies upon *Brady*, 397 U.S. at 742, and *Tollett* v. *Henderson*, 411 U.S. 258 (1973), to argue that the defendant is precluded from relief by virtue of his guilty pleas.[12]   We do not agree.   The essence of the defendant's complaint is that the constitutional infirmity of prosecutorial vindictiveness infected the very process which culminated in the guilty pleas.   Such a claim is not within the scope of *Brady*, 397 U.S. at 751 n.8, or *Tollett*, 411 U.S. at 267 ("A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of

---

[11] We are aware of the fact that prosecutors could seek to avoid potential *Pearce* problems in the plea bargaining process by offering unrealistically harsh alternatives from the outset.   However, such a practice would, as a practical matter, present defendants with little choice but to proceed to trial, and it would frustrate the process to the detriment of all.   As stated in *Blackledge* v. *Allison, supra,* 431 U.S. at 71: "Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.   Properly administered, they can benefit all concerned.   The defendant avoids extended pretrial incarceration and the anxieties and uncertainties of a trial; he gains a speedy disposition of his case, the chance to acknowledge his guilt, and a prompt start in realizing whatever potential there may be for rehabilitation.   Judges and prosecutors conserve vital and scarce resources.   The public is protected from the risks posed by those charged with criminal offenses who are at large on bail while awaiting completion of criminal proceedings." (footnote omitted.)

[12] The court was not required to reach this issue in *Blackledge* v. *Perry*, 417 U.S. at 30-31, because the State was precluded by the due process clause in the first instance from requiring the defendant to answer to the felony charge to which he pleaded guilty.   See also *Commonwealth* v. *Zion*, 359 Mass. 559, 563 (1971).

every conceivable constitutional plea in abatement he might have to the charge"), and it is not waived by the plea itself. See *Blackledge* v. *Allison, supra,* 431 U.S. at 71-83. The Commonwealth has never contended that its actions did not produce the pleas; indeed, in its brief it states that the pleas "were the product of give-and-take negotiations" which were permissible. A plea "must be considered as voluntary for the present purpose if it is the defendant's own, guided by reasonable advice of his counsel, his own knowledge of what he has done, and a fair understanding of the alternatives." *Commonwealth* v. *Manning,* 367 Mass. 699, 706 (1975). *Commonwealth* v. *Bolduc,* 375 Mass. 530, 536-537 (1978). A plea induced through the imposition of a penalty upon the exercise of the right to trial is the antithesis of a voluntary plea of guilty by its very nature. If in the plea negotiation process a prosecutor can redefine at will the risks of proceeding to trial, then a defendant cannot have a fair understanding of the alternatives to his plea because they will be subject to inexplicable change. Moreover, counsel cannot guide a defendant with reasonable advice in such a situation. Consequently, a plea which rests upon this distortion of the negotiation process cannot be voluntary, and the defendant should have been allowed to withdraw his pleas.

The Commonwealth argues that the defendant should not be allowed to withdraw his pleas because if he elects to proceed to trial he will be immunized from receiving a harsher sentence than that imposed upon his guilty pleas by the implications of *Pearce.* The Commonwealth contends that this will place the defendant in a superior position because he was never guaranteed that after a trial the judge would accept the Commonwealth's sentence recommendation. We do not agree. Unlike a hearing on the offering of guilty pleas, a trial provides a judge with far more information about the defendant and the crime charged. "*Pearce* was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some

valid reason associated with the need for flexibility and discretion in the sentencing process. The possibility of a higher sentence was recognized and accepted [in *Pearce,* 395 U.S. at 723] as a legitimate concomitant of the retrial process." *Chaffin,* 412 U.S. at 25. Thus, *Pearce* does not provide immunity to a defendant. It provides protection against vindictiveness, and not against the imposition of a sentence in accordance with proper motives. Cf. *Colten* v. *Kentucky,* 407 U.S. 104 (1974); *Gavin* v. *Commonwealth,* 367 Mass. 331 (1972).

The order denying the defendant's motion to withdraw his pleas is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*


ARMSTRONG, J. (dissenting). In *Bordenkircher* v. *Hayes,* 434 U.S. 357 (1978), the Supreme Court rejected a contention that the principle of *North Carolina* v. *Pearce,* 395 U.S. 711 (1969), should be extended into the area of plea negotiation. It drew a distinction between a defendant's right to appeal from a conviction, which was involved in the *Pearce* case and in *Blackledge* v. *Perry,* 417 U.S. 21 (1974), and the defendant's right to insist on trial, which the Supreme Court had recently (see *Brady* v. *United States,* 397 U.S. 742 [1970]) held could be burdened by the possibility of a more onerous sentence. "Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system." *Bordenkircher* at 361-362, quoting from *Blackledge* v. *Allison,* 431 U.S. 63, 71 (1977). "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of those difficult choices [is] an inevitable' — and permissible — 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' *Chaffin*

v. *Stynchcombe,* [412 U.S. 17, 31 (1979)] . . . . [T]his Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Id.* at 364. In light of the *Bordenkircher* decision, the majority seems to me to be on unsound ground in applying the principles of *North Carolina* v. *Pearce* and *Blackledge* v. *Perry* to a sentencing recommendation proposed by a prosecutor in the process of plea negotiation.

The majority seem to treat as pivotal the fact that the prosecutor changed his position as to the sentence he would recommend if the defendant insisted on going to trial.[1] But

---

[1] Unless the change of position is justified by new information coming to the attention of the prosecutor after the original proposal for a sentence recommendation, the majority seem to hold that the change is prompted by "vindictiveness" as matter of law, thus fitting the case into the operative rubric of *North Carolina* v. *Pearce* and eliminating the need for an inquiry into the prosecutor's actual motives. Doubtless a trial judge may and should permit a defendant to withdraw a guilty plea which was induced by unfair, vindictive, or unconscionable behavior by a prosecutor, but the record before us shows none of these. The prosecutor explained to the judge (this being the explanation from which the majority infer "vindictiveness" in the artificial sense in which they employ the word) that he had offered the three-year recommendation despite the consensus in his office that the defendant should be given four years of in-prison time, that his proposed recommendation was based on an erroneous surmise that the defendant has no thought of contesting his guilt and that he was genuinely conscience-stricken; that when the defendant indicated he might go to trial and filed what the prosecutor thought to be dilatory motions, the prosecutor "felt in good conscience that the original recommendation in this case was not a fair one"; that based on "the consideration of the [d]efendant's attitude, that given a substantial prior record, the large number of offenses still facing him, the probation violation that was still facing him, the fact that in the past he has served as many as ten months already in jail, I felt that the recommendation was really too lenient. I communicated all that information to [the defendant's counsel] on May 11th of 1979. I have notes to that effect. I communicated that to him as soon thereafter as I felt that in my good conscience I could not stick with that recommendation, your Honor. I communicated that to him forthrightly, openly, honestly and expeditiously. That communication was made on May 11, 1979. I'd suggest that there could be no substantial reliance whatsoever on the fact of that original recommendation; that the [d]efendant was privy to that information for ten days prior to that time that we walked into this courtroom two days ago."

the *Bordenkircher* case also involved a change of position by the prosecution;[2] the Supreme Court nevertheless held that the principle of *North Carolina* v. *Pearce* had no application because the change of position occurred in the context of plea negotiation. It is settled, of course, that the prosecutor may not renege on his promise after the defendant has pleaded guilty in reliance on it. *Santobello* v. *New York*, 404 U.S. 257 (1971). But neither case law nor principles of contract or equity bind the prosecutor before that time. It is a one-sided negotiation indeed, where the defendant is at

---

[2] Both the *Bordenkircher* case and *Blackledge* v. *Perry* involved a change in the charges returned against the defendant. In *Perry* a more severe charge was brought after the defendant had been found guilty of a lesser charge in a District Court and had taken an appeal to a Superior Court where he would obtain a trial de novo; it was held that *North Carolina* v. *Pearce* precluded the bringing of the more severe charges, that such action impermissibly burdened the defendant's statutory right to appeal. In the *Bordenkircher* case the prosecutor told the defendant that if he did not plead guilty to the pending charge the prosecutor would cause more severe charges to be brought; the prosecutor later carried out the threat. The Court of Appeals, relying on *North Carolina* v. *Pearce*, held in a decision reasoned strikingly like the majority's decision in the present case that "[w]hen a prosecutor obtains an indictment less severe than the facts known to him at the time might permit, he makes a discretionary determination that the interests of the state are served by not seeking more serious charges . . . . Accordingly, if after plea negotiations fail, he then procures an indictment charging a more serious crime, a strong inference is created that the only reason for the more serious charges is vindictiveness. Under these circumstances, the prosecutor should be required to justify his action." *Hayes* v. *Cowan*, 547 F.2d 42, 44-45 (6th Cir. 1976), quoted in the *Bordenkircher* opinion, 434 U.S. at 361 n.6. The Supreme Court reversed, holding *North Carolina* v. *Pearce* and *Blackledge* v. *Perry* inapplicable. "In those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction — a situation 'very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power.'" *Bordenkircher* at 362, quoting from *Parker* v. *North Carolina*, 397 U.S. 790, 809 (1970) (opinion of Brennan, J.). The opinion of the majority in the present case goes further in restricting the prosecutor's discretion than did the Court of Appeals decision which was overturned in the *Bordenkircher* case, binding the prosecutor not only to a position formally taken by the bringing of the charge but also to a sentencing position informally taken at an early stage of plea negotiation.

liberty to change his position at any time before making his plea, but each position taken by the prosecutor represents an irrevocable concession to the defendant. The all-but-inevitable practical result of such a rule would be that the prosecutor will put a harsh alternative to the defendant at the outset and will not soften that position significantly; in consequence, fewer plea bargains will be struck, more cases will be tried, and defendants who plead guilty under the law as it now stands will be deprived of the benefits of the plea bargaining system and will tend to receive more severe sentences. See *Brady* v. *United States,* 397 U.S. at 752.[3] Plea bargaining would doubtless have no place in an ideal criminal justice system; but the *Brady* and *Bordenkircher* cases acknowledge the dependence of our present system on free and frank plea negotiation; and the latter seems to me to be a square holding that the principles of *North Carolina* v. *Pearce* and *Blackledge* v. *Perry* have no application to the plea negotiation process.

There is further reason that the judge's decision should not be disturbed. The defendant's motion, which was, in effect, a motion for a new trial, raised nothing that was not fully known to the defendant and his counsel at the time the defendant entered his guilty plea. See Smith, Criminal Practice and Procedure §§ 1087, 1088 (1970). It is well settled that a defendant "may not waive or terminate a trial by pleading guilty, sample the penalty and then elect to litigate preexisting nonjurisdictional legal questions." *Commonwealth* v. *Zion,* 359 Mass. 559, 563 (1971). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty

---

[3] Correspondingly, it must be conceded, some of those who plead guilty under the present system will, as a result of being forced to trial, be acquitted.

plea by showing that the advice he received from counsel was not within the standards set forth in [*McMann* v. *Richardson,* 397 U.S. 759 (1970)]." *Tollett* v. *Henderson,* 411 U.S. 258, 267 (1973).[4] "Voluntary", in this context, does not mean free from the influence of a potentially more severe sentence recommendation if the defendant should elect to go to trial, *Brady* v. *United States,* 397 U.S. at 751; and nothing more coercive than that is alleged or proven in the instant case.

I would affirm the action of the judge in refusing to set aside the defendant's guilty pleas.

---

[4] The Supreme Court has recognized one exception to that rule, but it is inapplicable here. That is where "[t]he very initiation of the proceedings against [the defendant] in the Superior Court . . . operated to deny him due process of law," *Blackledge* v. *Perry,* 417 U.S. at 30-31. In that case (see note 2, *supra*) the prosecutor, following the defendant's appeal to a superior court from his misdemeanor conviction at the District Court level, secured a felony indictment based on the same facts.