Filed 12/29/15  P. v. Whitaker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>JABAHL LEE WHITAKER,<br><br>    Defendant and Appellant. | C076820<br><br>(Super. Ct. Nos. 13F07954,<br>  13F03835) |

After a confrontation with a security guard in a parking lot where defendant Jabahl Lee Whitaker drew a gun and threatened to kill the guard, a jury found defendant guilty of making criminal threats (Pen. Code, § 422) and possession of a methamphetamine pipe (Health & Saf. Code, § 11364.1) in case No. 13F07954.  The trial court found true the allegation that defendant had a prison prior (§ 667.5, subd. (b)) and that defendant had violated probation in case No. 13F03835.  The court sentenced defendant to a total term of four years in prison.

1

On appeal, defendant contends that his convictions must be reversed because the prosecutor impermissibly lowered the burden of proof by asking defendant about his motive in testifying and there was instructional and evidentiary error. He further contends that his prior prison term enhancement must be stricken because his conviction in that case was for an offense, petty theft with a prior, which is no longer a felony under Proposition 47.

Although we find both instructional and evidentiary error, we find these errors harmless, both individually and cumulatively. We explain why we decline to consider defendant's contention that we must strike his enhancement. We affirm.

## FACTS

On December 7, 2013, Moshin Nayyef was working as a security guard at Citrus Heights Plaza Center. Customers complained about an aggressive panhandler at the BevMo liquor store and the manager told Nayyef to ask the man to leave. Nayyef approached defendant, who was eating a sandwich, and asked him to leave. Defendant asked why and Nayyef explained there had been complaints. Defendant said he would not leave. After Nayyef told defendant he would call the police, defendant started walking.

Nayyef followed defendant at a distance of 30 feet to make sure defendant was leaving the property. Defendant threw his sandwich at Nayyef and said, " 'Back off or I'll shoot you with my .45.' " Nayyef called the police. Again, defendant said, " 'Back off or I'm going to shoot you.' " Defendant then pulled out a gun and said, " 'I'm going to shoot you, motherfucker.' " Defendant had his arm extended and the gun pointed at Nayyef. Nayyef was afraid defendant would shoot him and took cover behind a car. Defendant's gun looked real to Nayyef, like a Wellington or a Glock.

Nayyef's 911 call to the police was played at trial. Nayyef reported that the suspect "just pulled a gun on me"; the suspect said, "[B]ack up or I'm gonna shoot you"

2

and then pulled a gun. "I saw the gun by my, by my own eyes, like he pulled the gun and he said he's gonna shoot me."

The police responded to the 911 call. Officer Mike Coltharp saw defendant, who matched the description of the suspect. Coltharp made eye contact with defendant, who jumped in a raised planter box. After the police detained defendant, another officer found a pipe used to smoke methamphetamine in defendant's backpack. The police found the gun in the planter box. The gun was a BB or pellet gun that resembled a handgun.

Defendant testified in his defense. At the time of the confrontation with Nayyef, defendant was homeless and "couch surfing." He claimed Nayyef came at him and told him, " 'Get the fuck out of here.' " Defendant denied that he threatened to shoot Nayyef, but admitted he threw his sandwich at him. Defendant explained the BB gun was broken; he had bought it for $5 and intended to fix it and either give it to his son or use it for target practice. He hid the gun from the police because that was "good common sense."

Defendant testified he did not realize he had the methamphetamine pipe. His friend Dave had given him the jacket with the pipe and a phone inside. Defendant admitted he did smoke methamphetamine.

Defendant had "quite a bit of stuff" in his backpack, such as some speakers, the pellet gun, flashlights, clothes, and deodorant. He explained he was a barterer; he bought, sold, and traded things. A picture of the contents of defendant's backpack was admitted at trial. It showed several items of merchandise still in boxes, a cell phone cover, a Halloween mask, flashlights, a hat, and a full bag of pistachio nuts.

## DISCUSSION

### I

*Questioning Defendant's Motive to Testify*

Over an unspecified defense objection, the prosecutor asked defendant, "Would you agree that your goal in testifying today is to be acquitted of the crimes that you're charged with, sir?" Defendant said, "yes." In closing argument, the prosecutor argued

3

defendant was the only one with something to gain in the trial; he sought an acquittal which gave him a reason to lie; and he lied because he was guilty. There was no objection to this argument.

Defendant contends the prosecutor impermissibly lowered the burden of proof by asking about his motive to testify and then arguing that his interest in the case gave him a motive to lie. He contends this argument used defendant's status as a criminal defendant to prove his guilt: his desire for an acquittal showed that he was lying and his lying was evidence of his guilt. Defendant further contends the trial court, by overruling the objection to the question about defendant's motive to testify, endorsed the view that defendant's testimony was necessarily biased. Defendant argues this "endorsement" was the equivalent of an instruction that the jury consider defendant's personal interest in the case in assessing his credibility. Defendant contends this court should follow federal cases that have found such instructions improper. (See *United States v. Gaines* (2d Cir. 2006) 457 F.3d 238, 246 [denouncing instruction that tells a jury that a testifying defendant's interest in the outcome of the case creates a motive to testify falsely]; *United States v. Bear Killer* (8th Cir. 1976) 534 F.2d 1253, 1260 [instruction to consider that he is the defendant and his personal interest in the case to assess credibility should not be given].)[1]

The defendant made a similar argument in *People v. Bunyard* (1988) 45 Cal.3d 1189 (*Bunyard*). There, the defendant complained "that the prosecutor committed misconduct by arguing that defendant was an 'interested party' and that the jury should

---

[1] As defendant recognizes, federal courts do not take a unanimous position on this issue. (See, e.g., *United States v. Nunez-Carreon* (9th Cir. 1995) 47 F.3d 995, 997-998 [upholding, with stated reservation, charge permitting jury to "consider any interest the defendant may have in the outcome of the case, his hopes and fears and what he has to gain or lose as a result of your verdict"]; *United States v. Jones* (5th Cir. 1979) 587 F.2d 802, 806 [proper to instruct jury that in assessing credibility it may consider defendant's " 'very keen personal interest in case' "].)

4

consider his interest and motive to lie when assessing his credibility. By analogy to early cases holding that the court in its instructions may not single out and specifically instruct on the defendant's interest because this throws the court's judicial weight into the scales against the defendant [citation] defendant reasons that prosecutorial argument which singles out the defendant's interest and motive to lie carries comparable weight and is misconduct warranting reversal." (*Id*. at p. 1222, fn. omitted.)

Our high court rejected the argument: "Defendant cites as misconduct that which the prosecutor was entitled to do." (*Bunyard*, *supra*, 45 Cal.3d at p. 1222.) Citing *People v. Jenkins* (1974) 40 Cal.App.3d 1054, at pages 1057-1058, the *Bunyard* court found comments concerning the defendant's bias and motive to lie were proper when such comments were fairly derived from the evidence. (*Bunyard*, at pp. 1222-1223.) In *Bunyard,* the defendant put his credibility at issue by denying the testimony of key prosecution witnesses. (*Id*. at p. 1222.) Here, defendant denied making any threats, contradicting the testimony of the key prosecution witness Nayyef. Thus, his credibility was put at issue and the jury was free "to 'consider anything in reason that tended to prove or disprove the truthfulness of his testimony, including the existence or nonexistence of a bias, interest or other motive. . . .' " (*Id.* at p. 1223, citing Evid. Code, § 780, subd. (f).)

The *Bunyard* court also rejected the argument that the prosecutor's comments violated due process. "He asserts that the prosecutor's emphasis on defendant being an 'interested party' created a 'presumption of guilt' and a presumption of interest and bias based solely on defendant's status as defendant and on his interest in acquittal, which conflicts with the presumption of innocence thereby lessening the People's burden of proof. We find no merit in defendant's position. The jury in the case at bar was not instructed by the court that there was any presumption of interest and bias; to the contrary, the instruction upon which the prosecutor [citation] based her argument relating to credibility clearly left the jurors a choice as to whether to find any existence of motive

5

or interest on the part of any witness, including defendant. Nor does the record show any argument from the prosecutor that the jury should presume guilt as the result of his status as the defendant or his interest in acquittal. We perceive no violation of due process under the facts presented." (*Bunyard*, *supra*, 45 Cal.3d at pp. 1223-1224.)

Any person accused of committing a crime has a deep personal interest in the case against him. By pleading not guilty and exercising his right to a jury trial, he necessarily seeks an acquittal. Thus, the prosecutor's question asked no more than what was readily apparent to the jury. Under *Bunyard*, the prosecutor was permitted to ask defendant's motive in testifying and then use his answer to argue that the jury should consider defendant's interest in the case and motive to lie when assessing his credibility.

Defendant argues *Bunyard* is inapplicable because it addressed only the allegedly improper allusion to defendant's interest in the case. He asserts his claim is different; he claims the prosecution used his interest as a criminal defendant as actual evidence of his guilt. Defendant highlights the People's somewhat circular argument that people lie in court because they are guilty and defendant wanted an acquittal so he lied. To the extent this argument differs from that rejected in *Bunyard*, it finds error in the prosecution's *argument*, not the prosecutor's *question* to defendant about his purpose in testifying. Defendant objected only to the question, not to the subsequent argument.

"As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion--and on the same ground--the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) To the extent that defendant now challenges the prosecutor's argument at trial, he has failed to preserve this claim of prosecutorial misconduct.

6

II

*Instructional Error*

Defendant contends the trial court erred in telling the jury that the instruction to view defendant's statements made before trial with caution unless they were in writing (CALCRIM No. 358) did not apply to any of defendant's statements that were alleged to be criminal threats. He contends the error was prejudicial because it bolstered Nayyef's credibility and impaired defendant's constitutional right to confront all witnesses against him.

The trial court instructed the jury: "You have heard evidence that the defendant made oral or written statements before trial. You must decide whether the defendant made any of these statements in whole or in part. [¶] If you decide that the defendant made such statements, consider the statements along with all the other evidence in reaching your verdict. [¶] It's up to you to decide how much importance to give to the statements. Consider with caution any statement made by the defendant tending to show his guilt unless the statement was written or otherwise recorded. [¶] This instruction applies to statements made by the defendant before the trial, other than a statement made by the defendant which is alleged to be a criminal threat in itself."

The purpose of this cautionary instruction is "to aid the jury in evaluating whether the defendant actually made the statement." (*People v. Diaz* (2015) 60 Cal.4th 1176, 1184 (*Diaz*)). In *People v. Zichko* (2004) 118 Cal.App.4th 1055, 1058, the court held that the cautionary instruction is not to be given in a criminal threats case, in which the statement constitutes the criminal act itself. In *Diaz,* our Supreme Court "granted review to resolve a conflict in the Courts of Appeal regarding whether a trial court has the duty to instruct a jury to consider a criminal defendant's out-of-court statements with caution when the statements at issue form the basis of a prosecution for making criminal threats." (*Diaz,* at p. 1181.) The court disapproved *Zichko* and held the cautionary instruction does apply to a verbal threat; "the cautionary instruction applies to any extrajudicial oral

7

statement by the defendant that is used by the prosecution to prove the defendant's guilt—it does not matter whether the statement was made before, during, or after the crime, whether it can be described as a confession or admission, or whether it is a verbal act that constitutes part of the crime or the criminal act itself." (*Id.* at p. 1187.)

The *Diaz* court further held that the cautionary instruction need no longer be given sua sponte. (*Diaz, supra*, 60 Cal.4th at p. 1190.) "The cautionary instruction on admissions is no longer 'necessary for the jury's understanding of the case' [citation] because courts are now required to instruct the jury, in all criminal cases, concerning the general principles that apply to their consideration of witness testimony. [Citation.]" (*Ibid.*) Any failure to give the instruction was subject to harmless error analysis under state law: "[W]hether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given. (*People v. Watson* (1956) 46 Cal.2d 818, 835-836.) Failure to give the cautionary instruction is not a violation of federal due process warranting the 'more stringent standard' of review for federal constitutional error. [Citation.]" (*Diaz*, at p. 1195.)

Here, the trial court *added* language to the standard CALCRIM instruction, specifically telling the jury that the cautionary instruction *did not apply* to defendant's alleged threats. Although this is a different error than that considered in *Diaz*, the *Watson* standard of harmless error still applies. "Mere instructional error under state law regarding how the jury should consider evidence does not violate the United States Constitution. (*Estelle v. McGuire* (1991) 502 U.S. 62, 71-75.)" (*People v. Dickey* (2005) 35 Cal.4th 884, 905.)

In determining whether instructional error was harmless, "[a] reviewing court considers 'the specific language challenged, the instructions as a whole[,] the jury's findings' [citation], and counsel's closing arguments to determine whether the instructional error 'would have misled a reasonable jury . . . .' [citation]." (*People v. Eid* (2010) 187 Cal.App.4th 859, 883.)

On this record, defendant has not shown that the addition to the cautionary instruction misled the jury such that there was a reasonable probability of a more favorable result without the error. The trial court properly instructed the jurors through CALCRIM No. 226 that "[y]ou alone must judge the credibility or believability of the witnesses" and that the testimony of each witness should be judged by the same standards, and provided relevant factors to consider in making credibility determinations. The court also instructed on how to evaluate conflicting evidence. (CALCRIM No. 302.)

The issue of Nayyef's credibility was the focus of the defense closing argument. Defense counsel attacked Nayyef's credibility, arguing that Nayyef had a motive to lie because at trial he had to tell the same (presumably false) story he had previously told the police. Counsel pointed out a number of "lies" by Nayyef: Nayyef misrepresented both his position and his length of employment on the social media site Linkedin; he claimed on a job application that he had been in the Special Forces in Iraq when he was actually a police officer; he testified he wrote a report about the incident with defendant, but did not; and he testified he left his job due to fear while he told his employer he left to go back to school.

" 'Since the cautionary instruction is intended to help the jury to determine whether the statement attributed to the defendant was in fact made, courts examining the prejudice in failing to give the instruction examine the record to see if there was any conflict in the evidence about the exact words used, their meaning, or whether the [statements] were repeated accurately.' [Citation.]" (*Diaz*, *supra*, 60 Cal.4th at p. 1195.) While Nayyef used slightly different language, sometimes including profanity and sometimes not, in testifying about the threats, his testimony was consistent with what he told the 911 dispatcher. The dispute was whether defendant made the threats, not the exact words or meaning. Without direct evidence calling into question the accuracy of the statements attributed to defendant, the trial court's error related to CALCRIM No. 358 was harmless. (See *People v. McKinnon* (2011) 52 Cal.4th 610, 680 ["This court has

9

held to be harmless the erroneous omission of the cautionary language when, in the absence of such conflict, a defendant simply denies that he made the statements"].)

III

*Evidentiary Error*

Defendant contends the trial court erred in admitting into evidence the contents of his backpack and testimony about the origin of his cell phone. He contends this evidence was not relevant to any issue in the case but was highly prejudicial because it suggested that he was violent and stole things.

A. *Background*

Before trial, the defense moved to exclude any reference to the contents of defendant's backpack, except the methamphetamine pipe and that a witness saw defendant put the gun there. The prosecutor had no objection; "I can't think of a reason why that would come in." Counsel explained there was merchandise in the backpack and a Halloween mask that some might find "creepy." Counsel was concerned the jury might think the merchandise was stolen. He asked that the photograph of the contents of the backpack not be shown. The court granted the request, finding the items in the backpack had no relevance. In response to the People's expressed concern, the court indicated that it would revisit the issue if something happened at trial to create some relevance or a need for such evidence.

During direct examination, defendant explained that before leaving the parking lot he paused to zip up his backpack because he "had a lot of stuff" in there that day. Defense counsel asked: "What kind of stuff did you have in there?" Defendant mentioned speakers, the pellet gun, flashlights, clothes, and deodorant. Defendant said it was not all his possessions, but "quite a bit of stuff."

Subsequently, the People argued defendant's testimony had "opened the door" to the admission of the contents of his backpack. The People argued the defense was trying to paint the picture that defendant was homeless and simply loitering with only his

10

belongings on his person. Defendant objected: "[T]hat was not the purpose of the question." Counsel argued the mask in particular should be excluded under Evidence Code section 352 as a "distraction" and "potentially quite prejudicial." The court found the "door has been opened as to this issue." The People were allowed to ask, at a minimum, about the contents of the backpack for purposes of defendant's credibility and how well he remembered what occurred.

The defense continued to argue the contents of the backpack should be excluded due to prejudice. The new merchandise carried the suggestion that it was stolen. The court affirmed its ruling now admitting the backpack's contents.

The prosecutor next raised the issue of defendant's cell phone. At the scene defendant told the officers it was his phone and he got it from his friend Steve, but at trial he testified on direct examination that he got the phone from his friend Dave. The prosecutor claimed this testimony opened the door to ask about the phone, why he was lying about the phone, and that the phone was stolen. She argued that although the charge for possessing stolen property had been dismissed, "the People still have a good faith belief that the cell phone was stolen, and that's why he is lying."

The court ruled that the People could ask about the prior inconsistent statement, but Evidence Code section 352 precluded the People from exploring whether the phone was stolen.

Defendant denied that he told the police officer he got the cell phone from someone named Stephen. The officer testified defendant said he got the cell phone from Steve.

During cross-examination, the prosecutor asked defendant about the contents of his backpack. Without objection, the People introduced a picture of the contents. The prosecutor then questioned defendant about each item, again without objection. Defendant testified he purchased the flashlights with money his mother gave him. The two products to straighten hair he had also purchased with money from his mother; he

11

was going to give those as gifts to his sisters.  Defendant explained he had some of the items because he bartered.  For example, one day when he went to trade items, the store he went to was "low on cash" so the owner "threw in" the mask.  After a few more questions, the defense objected to relevance and the court overruled the objection.  The prosecutor next asked about defendant's testimony that he had clothes in the backpack; the only item of clothing was a hat.

B.  *Analysis*

1.  Origin of Cell Phone

We find no error in admission of evidence as to who gave defendant the cell phone, Dave or Steve.  The testimony of the officer that defendant had given a different answer about from whom he had obtained the phone was classic impeachment evidence.  "Impeachment is the process of challenging or impugning the credibility of a witness.  One commonly used method of impeachment is the adducing of evidence of a prior statement by the witness inconsistent with his testimony on the stand, for which purpose the statement is not considered to be hearsay.  [Citation.]"  (*People v. Sam* (1969) 71 Cal.2d 194, 208.)

2.  The Contents of the Backpack

The People contend that because defendant introduced the testimony about the contents of the backpack on direct examination, he cannot complain of the additional evidence about its contents on cross-examination.  The People assert that defendant invited any error.  "The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest.  If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal."  (*People v. Wickersham* (1982) 32 Cal.3d 307, 330, disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 201.)  Appellate courts have applied the invited error doctrine when the trial court permits the admission of evidence previously ruled inadmissible after defendant first elicits the evidence.  (*People v.*

12

*Gutierrez* (2002) 28 Cal.4th 1083, 1138-1139 [no error to admit prior for impeachment despite earlier ruling to exclude where defendant elicited evidence].)

This case does not present a proper application of the invited error doctrine. In *Gutierrez*, the defendant "expressly requested the trial court to reverse its prior ruling and rule admissible for impeachment purposes the 1984 prior conviction." (*People v. Gutierrez, supra,* 28 Cal.4th at p. 1139.) The defendant then elicited the evidence that he had been in prison and had served time for assault. (*Ibid*.) The invited error doctrine prevented defendant from challenging on appeal a ruling that *he had requested*.

Here the situation is different. The trial court ruled the contents of defendant's backpack were inadmissible because "they don't have any relevance to any issue in this case." Thereafter, in direct violation of the court's ruling, defense counsel asked defendant what was in his backpack. The reason counsel asked this question is unclear; defense counsel claimed he was trying only to describe defendant's appearance. The prosecution suggested the defense wanted to paint the sympathetic picture that defendant was homeless and simply loitering with his few belongings on his person when he was confronted by an aggressive security guard. But the contents of the backpack, particularly the mask and unopened merchandise, did not support this "sympathetic picture" and the defense had earlier succeeded in excluding this evidence as prejudicial.

Witkin discusses this situation--an apparent mistake or error in eliciting the excluded testimony in the first instance--as follows. "A practical problem about which the authorities are difficult to reconcile arises as follows: A witness, on direct or even cross-examination makes a statement on an irrelevant matter. The adverse party may have it excluded on objection or motion to strike, but sometimes does not do so. If the evidence were relevant and merely incompetent (e.g., hearsay or inadmissible opinion), the failure to object would be a waiver of its inadmissibility [citation]. On the other hand, failure to object cannot give irrelevant evidence any probative effect [citation]. *May the adverse party nevertheless take advantage of the error in the testimony and the party's*

13

*own failure to object, and impeach the witness, by cross-examination or rebuttal, on the collateral matter*? [¶] In support of such a right, it has been said that the offering party on direct examination opened the 'door' or the 'gates,' and that the adverse party is 'fighting fire with fire,' but the metaphors explain nothing. *The real question seems to be whether the matter improperly admitted on any examination was prejudicial and not curable by objection or motion to strike.* If so, the adverse party should be permitted to contradict it, under the doctrine of 'curative admissibility' [citation]. *If it is not prejudicial, there seems no reason to permit the adverse party to capitalize on the blunder or accident by offering impeaching evidence on a collateral matter.* [Citations.]" (3 Witkin, Cal. Evidence (5th ed. 2012) Presentation at Trial, § 363, pp. 509-510, italics added.)

In *People v. Steele* (2002) 27 Cal.4th 1230, defendant was on trial for murder and there was evidence he had committed a prior murder. The pathologist who performed the autopsy on the victim was allowed to testify about similarities between the two murders. (*Id.* at p. 1246.) On cross-examination, the defense elicited the opinion that the earlier killing might have been committed in a rage. On redirect, the prosecutor asked if that murder could also have been methodical. On appeal, defendant contended it was error to admit this testimony. Our Supreme Court rejected the argument, noting that the defense initiated this line of testimony; once the defense asked if the killing might have been done in a rage, the People were entitled to counter this testimony with the pathologist's opinion that the killing might have been methodical. (*Id.* at p. 1247.) The court noted Witkin's discussion of the admission of an irrelevant matter without objection by the other party, but declined to express a view because it found the question not presented. (*Id.* at pp. 1248-1249.) It found the defense question about a rage killing "was neither irrelevant nor a blunder." (*Id.* at p. 1249.) The court did, however, state: "We also agree that a party should not be allowed to take advantage of an obvious mistake to introduce prejudicial evidence." (*Id*. at p. 1248.)

14

That is what happened here.  The trial court and both parties had agreed that evidence of the contents of defendant's backpack was irrelevant.  The defense question eliciting those contents was an obvious mistake.  The question violated the favorable ruling that the defense had obtained, did not aid the defense, and allowed the People to present irrelevant but prejudicial evidence.  Thus it was error to admit the evidence of the backpack's contents, particularly evidence as to how and why defendant obtained each item.  However, the error was harmless.

Defendant contends admission of the contents of his backpack was prejudicial because the unopened items of merchandise created the inference that defendant stole them, and his possession of the "scary" mask and the pellet gun suggested that he obtained them through violence.  Although we agree evidence of the contents of defendant's backpack was prejudicial because it suggested defendant was a thief, we find it was not so prejudicial that it is reasonably probable a more favorable result would have been reached if it had been excluded.  (*People v. Watson, supra,* 46 Cal.2d at. p. 836.)  The challenged evidence was not evidence of uncharged crimes; at most it raised an inference of prior criminal activity.  That defendant had a criminal history was established by other evidence.  He reluctantly admitted he had been convicted of three felonies (in 2005, 2010, and 2013) and that he was on formal, searchable probation at the time of this incident.  That defendant might be violent was established by his possession of the gun and testimony about his threats; the mask added little to that evidence.

Admission of this challenged evidence eroded defendant's credibility as he gave rather incredible answers to the questions of how and why he had the merchandise.  Defendant's credibility, however, was questionable even without these answers.  He testified that once he discovered his backpack was open, he took the pellet gun out of his backpack and put it in the front of his pants rather than simply zipping up the backpack.  He gave an odd story about buying and possible future use of the gun.  He was often unnecessarily evasive on cross-examination; for example, he initially answered

15

"[p]robably so" and "I don't remember" about his prior felony convictions before admitting them. He claimed not to know the last names of women he called his girlfriends. In contrast, Nayyef's credibility was much stronger. Although the defense revealed several instances of "puffery" by Nayyef, it did not shake his story of the threats, a story confirmed in real time by the 911 call.

C. *Cumulative Error*

Defendant contends the cumulative effect of the errors requires reversal. "[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error. [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 844.) We have found no error with respect to lowering the standard of proof and the instructional error was clearly harmless in light of other, proper instructions and argument. As we have described, the evidentiary error was also clearly harmless and does not contribute to any finding of prejudice. The issue is not whether there was more than one error, but whether defendant's guilt on the charge was "fairly adjudicated" and we must affirm "absent a clear showing of a miscarriage of justice." (*Ibid.*) There was no miscarriage of justice here.

IV

*Striking Prior Prison Term Enhancement*

In November 2014, California voters approved Proposition 47, The Safe Neighborhood and Schools Act (the Act). The Act "makes certain drug- and theft-related offenses misdemeanors, unless the offenses were committed by certain ineligible defendants." (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091.) The Act now makes petty theft with a prior a misdemeanor except for certain defendants who are required to register as sex offenders or have certain prior convictions for violent or serious felonies or elder abuse. (§ 666, subds. (a), (b).) The Act also provides a procedure for a defendant who has completed his sentence for a felony that would be a

16

misdemeanor under the Act to apply to the court to have his felony conviction designated as a misdemeanor. (§ 1170.18, subd. (f).)

Defendant contends his one-year prior prison term enhancement (§ 667.5, subd. (b)) must be stricken due to the change in the law made by Proposition 47. This enhancement was based on his 2010 felony conviction for petty theft with a prior. (§ 666 as amended by Stats. 2000, ch. 135, § 134, p. 1991.) Defendant contends he does not fall within the class of defendants for whom petty theft with a prior is still a felony, and since he would not have received a prison term under the Act for his 2010 petty theft, the prior prison term enhancement must be stricken. Defendant's argument is premature. In *People v. Diaz* (2015) 238 Cal.App.4th 1323, the defendant also had a prior prison term enhancement based on a felony conviction for petty theft with a prior. He argued that his petty theft would have been a misdemeanor if the Act had then been in effect, so it could not be the basis of the enhancement. (*Id.* at p. 1327.) The court found that section 1170.18 provided the only remedy; the defendant first had to file an application under section 1170.18, subdivision (f) to re-designate his prior theft offense as a misdemeanor. (*Id.* at pp. 1331-1332.) Here, as in *Diaz*, there is no evidence that defendant has filed the necessary application to reduce his 2010 felony. Accordingly, we will not consider his argument.

17

## DISPOSITION

The judgment is affirmed.

      /s/           

Duarte, J.

We concur:

      /s/           

Butz, Acting P. J.

      /s/           

Hoch, J.